Roberts, et al. *v.* Robertson

No. 40674        February 17, 1958        100 So. 2d 586

*Owen Roberts,* Brookhaven, for appellants.

*Jones & Stratton,* Brookhaven, for appellee.

GILLESPIE, J.

Appellee, John B. Robertson, Jr., doing business as Brookhaven Roofing and Sheet Metal Works, filed suit against John S. Roberts, doing business as Roberts Plumbing Company, and Standard Accident Insurance Company, surety on the performance bond of Roberts, to recover for an alleged breach by Roberts of a sub-contract. When appellant is used herein, it refers to John S. Roberts.

Appellant Roberts filed an answer and cross-bill, and upon the trial of the issues, appellee was granted substantially all of the relief prayed for.

▉▉ ▉ Some of the facts are in sharp dispute, and as to all issues where appellee prevailed, the facts are stated in the light most favorable to appellee.

The First Baptist Church of Brookhaven, Mississippi, undertook to construct an addition to the Church, an educational building, and to that end had its architect, Charles H. Dean, Jr., prepare plans and specifications. Sometime prior to February 1954, the Church awarded certain contracts, including one to appellee, which was the prime contract for all heating and air conditioning for the sum of about $47,700. In February 1954, appellee entered into a sub-contract with appellant for certain piping, the pertinent provisions thereof being as follows:

"The Sub-Contractor shall furnish all labor and materials and perform all work for piping of air condition system in strict accordance with plans and specifications, general conditions, special conditions and Addendum 1 of Charles H. Dean, Jr., Jackson, Mississippi, for Educational Building including additions and alterations First Baptist Church, Brookhaven, Mississippi. Performance of work to be in such manner as to avoid delay in progress of job, for the sum of: ($2665.17) TWENTY SIX HUNDRED SIXTY FIVE DOLLARS AND SEVENTEEN CENTS."

The specifications prepared by Charles H. Dean, Jr., Architect, for the First Baptist Church, provided, among other things:

"18. HEATING AND COOLING PIPE:

"a. All heating and cooling pipe shall be standard weight black steel with cast iron fittings.

"20. HEATING AND COOLING PIPE COVERING:

"a. All lines for heating only are to be covered with 4 ply asbestos air cell sectional covering with all joints sealed and each section banded in place. Cover valves and fittings with plastic asbestos cement and cover with 8 oz. canvas pasted on.

"b. All pipes used for combination heating and cooling shall be covered with Johns-Manville 1½" Sectional antisweat pipe covering: Seal all joints and band in place."

Appellant undertook the work called for in the contract, beginning in March 1954. About May 1954, appellant changed foremen on the job and at that time some of the piping and some of the insulation had been installed, but this was improperly done and had to be taken out and done over. A few days before November 20, 1954, appellant's foreman, Henry, who had authority to do so, informed appellee that appellant was through and any further work done by appellant on the job would be for additional compensation. At that time, appellant had not completed installing the pipe and there was a substantial amount of work to be done in insulating the pipe. Appellee then informed appellant's foreman that if they were through "to get their tool box and get out," which they did.

Shortly thereafter, appellee employed another firm to complete the installation of the pipe and complete the insulation of the pipe at a cost of $2499.99. At the time appellant abandoned the job, he had been paid on his contract the sum of $1658.35. Appellant performed certain other work for appellee in assembling a boiler and installing a compressor and to recover this amount was one of the objects of the cross-bill filed by appellant. The contract and the performance of the same for assembling the boiler and installing the compressor was made within a few weeks prior to November 20, 1954, and was an oral contract called extra work. A stipulation was

entered between appellant and the appellee with reference to the labor performed by appellant in assembling the boiler and installing the compressor and it was agreed that as to that item appellant owed appellee the sum of $123.22. There was dispute as to whether any materials were used on that extra work and the court as to that item found that appellee owed appellant $316.70 for materials used in assembling the boiler and installing the compressor.

At the time appellant terminated the written contract shortly before November 20, 1954, appellant had expended an amount considerably in excess of the contract price of $2665.17. It is apparent that appellant underbid the contract. The decree entered by the chancellor gave judgment for appellee against appellant and his surety for $1053.25, arrived at as follows:

| | | |
|---|---|---|
| Amount paid appellant on written contract when the contract was terminated | | $1658.35 |
| Amount expended by appellee to complete written contract | | 2499.99 |
| Total | | $4158.34 |
| Total amount of written contract | $2665.17 | |
| Labor assembling boiler and installing compressor, extra work on oral contract, per stipulation | 123.22 | |
| Materials furnished by appellant in assembling boiler and installing compressor, extra work | 316.70 | |
| Total | | $3105.09 |
| Amount of judgment | | $1053.25 |

The central question in this case is whether the insulation of the pipe was part of the work to be performed by appellant under the written contract. Appellant does not charge that the contract was ambiguous, but contends that since the word "insulation" was not used in the contract itself that he was not bound to install the insulation which was required by the specifications. The chancellor allowed a great deal of testimony to explain the contract, including the testimony of an expert contractor. The contract very plainly required appellant *"to furnish all labor and materials* and perform *all work* for piping of air conditioning system *in strict accordance with plans and specifications."* The specifications required the pipe to be insulated.

It is generally held that where a building contract refers to plans and specifications and so makes them a part of it, the contract is to be construed as to its terms and scope together with the plans and specifications. 9 Am. Jur., Building and Construction Contracts, Sec. 11, p. 11. Moreover, it seems to us that the actions of the parties subsequent to entering into the written contract shows that both parties contemplated that appellant was required under the contract to insulate the pipes. It was not until a few days before November 20, 1955, when the entire job was about complete that appellant indicated that he was not required to insulate the pipes. Appellant had let no other contract to any other person or firm to do this work until after appellant announced he was through and would do no more work unless he received extra compensation. Appellant made his first order for the insulating material to insulate the pipes on or before April 16, 1955, and thereafter, up until November, expended in excess of $2,000 on labor and materials in insulating the pipes without any contract therefor, except the written contract first referred to, and until a few days before November 20, 1954, never asked appellee for any extra

compensation for insulating the pipes. It is inconceivable that appellant would have expended in excess of $2000 on the insulation job if he did not understand that it was included in the contract.

■■ We think that the contract itself was sufficient to require the insulation of the pipes, and if any doubt should exist, the actions of the parties removed any doubt that both parties contemplated that appellant was obligated to insulate the pipes.

■■ Appellant contends that under the provisions of the general conditions, Section 22, applicable to the prime contract, that he was entitled to seven days notice from appellee after appellee first obtained the necessary certificate from the architect. This Section 22 is contained in the standard general conditions according to that standard form of the American Institute of Architects. Appellee admitted that he did not receive any certificate from the architect and did not give any written notice under the terms of said Section 22, General Conditions, but this contention is untenable because the appellant terminated the contract and abandoned the work and the chancellor so found on conflicting testimony.

We held in Oden Construction Co. v. Helton, et al., 218 Miss. 41, 65 So. 2d 442, in dealing with the requirement of notice under Section 22 of the General Conditions, that the contractor may waive the necessity for notice; and that where a builder refuses to comply with his contract and completely abandons it, by refusing to perform it, it will be considered that he has waived the requirements of an architect's certificate.

■■ Appellant finally contends that he was entitled to twenty percent on the cost of labor and materials on the oral contract in assembling the boiler and installing the compressor. The basis of this contention is that appellee admitted that the contract was on a cost plus twenty percent basis. A careful review of the record reveals that appellee did admit that the labor in assem-

bling the boiler and installing the compressor was to be performed on a cost plus twenty percent basis, but he denied that any materials were to be furnished. The chancellor correctly denied appellant recovery of the twenty percent on the labor because appellant and appellee stipulated that appellant owed appellee $872.50 as labor for assembling the boiler and installing the compressor, and that on some other job not connected with this suit appellant owed appellee $749.63, and the stipulation concluded, "leaving a balance due and owing as between the parties with respect to these items of $123.-22." The chancellor could not go behind this stipulation as to this item of labor. We do not find any evidence in the record, and none has been called to our attention by appellant, that required the chancellor to allow appellant twenty percent on the materials.

Affirmed.

Roberds, P. J., and Kyle, Arrington and Ethridge, JJ., concur.