967 So.2d 1264 (2007)
Timothy Lee TACKETT, Appellant
v.
Kim Oliver TACKETT, Appellee.
No. 2006-CA-01157-COA.
Court of Appeals of Mississippi.
November 6, 2007.
*1265 Duncan L. Lott, Booneville, attorney for appellant.
Candace Cooper Blalock, attorney for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. Tim and Kim Tackett married in September 2003, after two decades of dating. While the first year passed without incident, the parties soon began to fight over money, or the lack thereof, and other issues. Following a fight the couple had on May 18, 2005, Tim moved out of their home in Amory and filed for divorce two days later in the Chancery Court of Monroe County. In turn, Kim requested separate maintenance. After hearing testimony from the parties and other witnesses, the chancellor denied Tim's complaint for divorce and granted Kim's petition for separate maintenance. Aggrieved by the chancellor's ruling, Tim now appeals. Finding no error, we affirm.

FACTS
¶ 2. Tim and Kim were married on September 6, 2003, after a courtship that lasted approximately twenty years. However, on May 18, 2005, Tim left the marital home. He filed for divorce two days later. During a trial on the matter in the Monroe County Chancery Court, the parties testified to the professed origins of Tim's discontent with the marriage and his reasons for leaving.
¶ 3. Tim testified that Kim was constantly yelling and cursing at him, and that their arguments mostly centered around money. Additionally, Tim claimed that the couple had not had sex for six months prior to trial as a result of Kim's loss of desire. Tim explained that the parties' alleged animosity towards one another came to culmination on May 18, 2005. Kim wanted to trade Tim's 1989 Toyota truck, which she claimed was in need of repair, for a newer truck. She also claimed that she wanted Tim to get a newer vehicle so the 1989 Ford Probe he was then driving, which was titled in Kim's name, could be used by her college-bound nephew at school. Kim also suggested that they trade in the Probe so that Tim could get a newer truck. Tim complained they did not have the money for a new vehicle, in part because Kim quit her full-time job, and the May 18, 2005 argument ensued. Finally, he stated that since he left the marital home on May 18, 2005, he had not provided any support to Kim.
¶ 4. Ann Hood, the parties' landlord, and Elizabeth Ann Carter, a neighbor, witnessed the parties arguing. Hood testified that she lived approximately 150 feet from the parties' trailer and heard yelling and screaming, though she could not understand the words. She testified that she remembered the tone of Kim's voice as hostile or angry, but did not remember hearing Tim. Carter stated that she also saw the parties arguing, and when Tim asked Kim to lower her voice Kim replied she was not going to and became louder. Carter also testified that she had overheard arguments from within Kim and Tim's trailer, but could never make out what was said.
*1266 ¶ 5. Prior to the parties' marriage, Kim was diagnosed with a chemical imbalance and began taking medication. She admitted at trial that her desire to have sex lessened as a result of the medication, but claimed the couple had sex approximately once a month. Once the parties married, she changed her medication in an attempt to increase her desire, but stated that it did not help. She also stated that Tim also had a condition that hindered sexual activity, but Tim claimed that this was taken care of with medication. Kim's medical condition also led to her resignation from her full-time position with the City of Amory as a meter reader. Kim testified that she was having problems doing her job because of depression and anxiety. She testified that her employer suggested she quit or she would have to be let go. In July 2004 she quit. She then found part-time employment in March 2005 with the City of Amory School District driving a school bus. Kim testified that for the last three or four months prior to the separation, Tim would come home after she had gone to sleep, would not eat supper at home, and slept in the spare bedroom. Tim explained that he would go to his parent's house, or to a friend's house, because he did not want to go home just to argue. Kim also suggested the couple get counseling, but Tim refused. Tim testified that he did not feel therapy was necessary because he was happy. Kim conceded that she was partly to blame over the separation, but claimed Tim was more at fault because he left. During trial Kim and Tim testified that he left the marital home while she was at church, without any mention that he was moving out.

PROCEDURAL HISTORY
¶ 6. On May 20, 2005, Tim filed a complaint requesting a divorce on the grounds of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Kim responded and denied there were grounds for divorce. Additionally, she filed a counter-complaint for separate maintenance. Tim responded and argued that Kim was not entitled to separate maintenance because her conduct contributed to the separation. Following a May 17, 2006 trial, the trial court dismissed Tim's request for a divorce on the ground of habitual cruel and inhumane treatment and awarded Kim separate maintenance in the amount of $1,200 per month. Aggrieved by the lower court's ruling, Tim now appeals.

ANALYSIS
¶ 7. Our standard of review of issues surrounding domestic relations is limited by the substantial evidence/manifest error rule. Ivison v. Ivison, 762 So.2d 329(¶ 10) (Miss.2000). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Id. (quoting Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). As such, a chancellor's findings of fact will not be disturbed so long as they are supported by substantial evidence. Martin v. Lowery, 912 So.2d 461(¶ 7) (Miss.2005). With this standard in mind, we move to the issues raised on appeal.
I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT KIM'S CONDUCT DID NOT MATERIALLY CONTRIBUTE TO THE SEPARATION OF THE PARTIES.
¶ 8. After reviewing the pertinent law surrounding the issue of material contribution, the chancellor held that while Kim admittedly shared in the cause of separation, she did not materially contribute to it. Tim disagrees with the chancellor's determination, and claims that Kim's *1267 actions were the only contribution as there was no proof offered of Tim's misconduct.
¶ 9. A decree for separate maintenance is a judicial command to a spouse to resume cohabitation with one's spouse or, in default thereof, to provide suitable maintenance of the spouse until such time as they may be reconciled to each other. Wilbourne v. Wilbourne, 748 So.2d 184(¶ 7) (Miss.Ct.App.1999). In order for the trial court to grant a wife's request for separate maintenance, it must be shown that (1) the separation was without fault on the wife's part, and (2) willful abandonment of her by the husband coupled with a refusal to support. Id. Additionally, the wife need not be totally blameless, and an award of separate maintenance may still be appropriate so long as the wife's conduct did not materially contribute to the separation. Shorter v. Shorter, 740 So.2d 352(¶ 12) (Miss.Ct.App.1999).
¶ 10. The record shows that Kim admitted she was partly to blame for the couple's separation, but maintained that Tim was more at fault because he left. From the testimony presented at trial, it is obvious that the parties' separation centered around sex and money. Tim claimed that it had been six months since their last sexual encounter. However, Kim testified that despite her loss of desire this was inaccurate, and the couple had sexual relations once a month. Additionally, Kim acknowledged that she and Tim had a heated argument on May 18, 2005, and there was testimony that the couple did argue. Tim initially testified that they had an argument every week to two weeks but later claimed that arguments occurred every other day. He stated that, "[m]ostly what we got into it about was money, me trying to get her to save money and she would spend it faster than I could get it in the bank." However, there was no evidence that Kim excessively spent money. When Kim suggested counseling to try to alleviate the couple's situation, Tim refused. Based upon the record before us, we cannot say that the trial court manifestly erred in finding that Kim did not substantially contribute to the separation, or that such a decision is not supported by substantial evidence.
II. WHETHER THE TRIAL COURT'S AWARD OF SEPARATE MAINTENANCE WAS EXCESSIVE.
¶ 11. The parties' 8.05 financial statements revealed that Kim's gross income was $700 per month (for ten months a year) and Tim's monthly gross income was $3,707.10. Their net monthly income after deductions for taxes, insurance, and mandatory retirement was $578.10 and $2,515.88, respectively. Kim claimed on her 8.05 statement that her total living expenses amounted to $1,825.80, although she initially stated during trial that her expenses totaled $1,200 to $1,300. Tim claimed his living expenses totaled $2,270. However, $940 of those expenses were based upon the assumption that Tim leased or owned his own residence rather than living with his mother. The chancellor awarded Kim $1,200 per month in separate maintenance.
¶ 12. Six factors must be considered in setting awards of separate maintenance: (1) the health of the husband and the wife, (2) their combined earning capacity, (3) the reasonable needs of the wife and children, (4) the necessary living expenses of the husband, (5) the fact that the wife has free use of the home and furnishings, and (6) other such facts and circumstances. Shorter, 740 So.2d at (¶ 21). While an award of separate maintenance should provide for the wife as if the couple were still cohabiting, the allowance should not "unduly deplete the husband's estate." Kennedy v. Kennedy, 662 So.2d 179, 181 (Miss.1995) (quoting Thompson v. Thompson, *1268 527 So.2d 617, 622 (Miss.1988)). In its ruling, the trial court found that Kim was not in good physical condition, while Tim's health was unquestioned. Secondly, noting the discrepancy in Tim's and Kim's financial situations, as evident from their 8.05 statements, the trial court held that Tim's earning capacity was greatly superior to Kim's. In line with the 8.05 statements, the chancellor found that Kim's necessary expenses amounted to $1,825.80 per month, while Tim's necessary expenses totaled $2,270. As to factor number five, the trial court held this moot as there was no martial home. Finally, the trial court considered the facts that Tim had additional assets (two retirement plans) totaling $24,153.44 and a life insurance policy, while Kim had none. The trial court also noted that, during the marriage, Kim cashed in her retirement account and spent the proceeds on various expenses, including a veterinary bill, a loan to her sister, and other debts.
¶ 13. In consideration of each parties' financial state and additional factors considered by the chancellor, we cannot say that an award of $1,200 to Kim is excessive or that the trial court abused its discretion in awarding such. While the award is in excess of Tim's income after expenses, such a situation is not without precedent. See Myers v. Myers, 881 So.2d 220(¶ 23) (Miss.Ct.App.2003) (reversed on other grounds by Myers v. Myers, 881 So.2d 180 (Miss.2004)) (awarding separate maintenance that amounted to 71% of the husband's income and leaving him with a net monthly income of $1,144 with stated monthly expenses of $5,054). We affirm.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND CARLTON, JJ., CONCUR. IRVING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, P.J. AND ISHEE, J. ISHEE, J., CONCURS IN RESULT ONLY.
IRVING, J., Specially Concurring:
¶ 15. I do not disagree with the majority. I think the present state of the law demands the outcome reached here. However, I write separately because I believe the facts in this case illustrate the need to change the law with respect to when a chancellor may grant a divorce on the ground of irreconcilable differences.
¶ 16. If ever there is a couple that need to be divorced, Timothy and Kim are that couple. After having dated for over twenty years, Timothy and Kim exchanged marriage vows, only to find after one year that marriage was not so blissful. Yet, they remain in a marriage that is clearly irretrievably broken, as manifested by their irreconcilable differences.
¶ 17. In my judgment, this case highlights the need for the legislature to take a fresh look at the grounds for allowing a divorce in this state. In cases where it is clear that the marriage is irretrievably broken, our chancellors should be able to grant a divorce on the ground of irreconcilable differences, even if the parties are unable or unwilling to meet the terms and conditions presently required by our statutory law for the granting of a divorce on the ground of irreconcilable differences. I can think of no public interest that is served by requiring two people to remain married under circumstances that are likely to lead only to more tension between them, especially in a situation like we have before us where one party has to pay a substantial sum of money to the other yet is unable to move on with his life.
*1269 ¶ 18. Because I am obligated to uphold the law as it exists, I concur with the majority, but I do so with the fervent hope that the legislature will revisit the bases for granting a divorce in this state.
LEE, P.J., AND ISHEE, J., JOIN THIS OPINION.