BARNES, J.,
for the Court:
¶ 1. This case involves a contractual dispute between Sheila Danette Wells and Price Construction Company (Price) regarding its remodeling of Wells’s home. In 2004, Price sued Wells for breach of a construction contract, claiming that Wells owed Price for certain changes Wells requested to the original work plans, which were performed by Price. Wells counterclaimed for poor workmanship on the remodeling job.
¶ 2. After several years of litigation and a bench trial which was held in abeyance, the trial court narrowed the issues to concern only the deficiencies of the roof installed by Price. Wells had contracted for a standing-seam metal roof, but instead, Price installed a corrugated metal roof at a substantially lower price, and the roof leaked. The court appointed an independent third-party contractor who found the roof deficient. The trial court then appointed Canton Roofing to make all necessary “repairs and/or replacements” on the roof, and ordered Price to pay the costs incurred by Canton Roofing. Canton Roofing determined it could not repair the existing roof and recommended it be replaced with a standing-seam metal roof. Canton Roofing proceeded to replace the roof at a cost of $41,750. However, Price claimed that it was never notified by Wells that Canton Roofing was replacing the roof.
¶ 3. Canton Roofing made repeated demands for payment from Price, but Price objected to paying this expense. The trial court found: “[Canton Roofing] made an inspection and determined that it could not repair and warrant the roof, but recommended full replacement, which was never explicitly approved by [Price].” Accordingly, the trial court stated another hearing should have occurred before the roofs replacement. The trial court modified its prior order, providing that Price pay only sixty percent of the cost, and Wells pay the remaining balance. Price paid its expense allocation to Canton Roofing; Wells did not.[1]
¶ 4. After a hearing and the conclusion of the bench trial, the trial court issued a final judgment, entitling Wells to “credits and offsets that negate any remaining amounts owed to Price for the construction contract and work performed. This includes the 40% portion of the [Canton Roofing] bill the court previously ordered Wells to pay,” meaning Wells did not have to pay any additional amounts on extra work performed by Price. However, the trial court reaffirmed that Wells had to pay forty percent of the cost of the replacement roof to Canton Roofing. Wells now appeals this judgment.
¶ 5. While the trial court may have erred in requiring Wells to pay forty percent of the cost of the replacement roof, Wells did not provide this Court with an adequate *1253 record upon which we can reverse the trial court’s judgment; therefore, we affirm.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 6. In April 2003, a construction contract was entered into between Price and Wells to remodel and build an addition to Wells’s home located in Magnolia, Mississippi. The project, as originally planned and specified, would have cost $268,552; however, Wells made five “change orders,” increasing the contract price substantially.[2] In November and December 2003, Wells engaged home inspectors, who concluded the work by Price to be incomplete, un-workmanlike, and defective. As a result of a payment dispute, in January 2004, Price filed a breach-of-contract claim against Wells in the Amite County Chancery Court, seeking $108,785.70 in damages, and other costs. Wells counterclaimed for breach of contract for deficiencies and poor workmanship, among other claims.
¶ 7. Extensive discovery ensued. In 2007, the case was transferred to the Am-ite County Circuit Court. In 2008, a bench trial on the merits began. After three and one-half days of testimony,[3] the parties requested the trial be held in abeyance while they attempted to resolve the dispute. However, no resolution was reached, and in February 2009, the trial court issued an order narrowing the issues. The parties agreed on a licensed independent contractor, David Battaglia, who would inspect the home and submit a report to the court. He was to examine the quality of the workmanship on the home and the completion of contractual specifications. Price would then have thirty days to rectify all construction defects and make repairs noted in the report. The trial court ordered Price to pay for all repairs.
¶ 8. Battaglia inspected the home. In a report, Battaglia stated, regarding the roof:
Specifications called for a standing seam metal roof, however, Contractor installed corrugated metal roof panels on the main house and adjacent garage/cottage which is a significant difference in respect to price and quality. The issue at hand is the repair of the existing roofing system.
At the time of my inspection, I observed several places where screws were rusting and backing out on the roof. I am sure that these were some of the areas where water entered the dwelling below. ... I observed several areas on the interior where there were stains from the water intrusion....
The roof repairs must ensure that the roof is watertight and there should be no evidence, interior or exterior to the house, of water intrusion once the repairs have been completed.

IMPORTANT:

The repairs to the metal roof will have to be specified by the original metal fabrication manufacturer representative and a written report of the findings and repair method should be provided and signed off by the representative to ensure the Warranty is honored over the long run.
In its April 29, 2009 order, the trial court adopted Battaglia’s report.
*1254 ¶ 9. After a hearing in August 2009[4] to resolve the pending issues related to the “installation, repairs and defective state” of the roof, in September 2009, the trial court appointed Canton Roofing “to make all necessary repairs, replacements and to do all things necessary to ensure [Wells’s] roof is satisfactory, watertight and meets all good workmanlike industry standards.” The trial court ordered all costs and expenses associated with Canton Roofing’s work to be paid promptly by Price.
¶ 10. In October 2009, Canton Roofing sent an email to counsel for Wells, stating it could not repair the roof and insure the roof would be watertight. Instead, it recommended removal of the current roof and replacement with a standing-seam metal roof. Attached to the email was a quote for the new roof of $41,750 plus tax. Counsel for Wells claimed she sent this email and attached the quote proposal to counsel for Price; however, counsel for Price claimed he never received either the email or the proposal. Wells’s counsel admitted that no hard copy of this information was sent to Price, but she submitted proof of sending the information electronically. Wells’s counsel stated she did not hear any objection from Price about the recommendation and proposal. Canton Roofing proceeded to replace the roof.[5]
¶ 11. On January 8, 2010, Canton Roofing sent its first invoice to Price for $18,000 plus tax. This invoice was forwarded to Price’s counsel on January 11, 2010, requesting payment in ten days as required by the court. The invoice also reflected the total price of the roof at $41,750. Price claimed it did not know the roof had been replaced until February 22, 2010, and objected to paying the invoice.
¶ 12. After repeated demands to Price by Canton Roofing for payment, Price filed a motion to clarify previous court orders in April 2010. In the motion, Price noted that replacement with a corrugated roof rather than a standing-seam roof would have only cost approximately $12,000, not $41,000. Also, counsel for Price claimed he was unaware of the standing-seam roof replacement proposal until February 22, 2010, and that he had no record of receiving Wells’s October 2009 email. After a telephonic hearing on the motion, on June 16, 2010, the trial court found that once Canton Roofing determined the roof needed to be completely replaced, another hearing should have been conducted. Also, the trial court found Price had “never explicitly approved” Canton Roofing’s recommendation to replace the roof. Therefore, the trial court modified its September 2009 order, providing Price pay Canton Roofing only sixty percent of the roof replacement, or $26,803.50 including tax, instead of the full cost. Wells was ordered to pay the remainder of the balance, or $17,869.
¶ 13. In response, Wells filed a motion to reconsider. In the motion, Wells noted that during the June 2010 telephonic hearing (for which there is no transcript in the record), the trial judge had based his decision on his belief that “[i]t appears Ms. Wells is getting a windfall ... because she wasn’t originally supposed to get a standing seam metal roof.” However, Wells declared that she contracted for and paid for a standing-seam metal roof in the original remodel plans and contract. Wells *1255 also noted that she originally complained about the roof because it leaked and was causing damage to her home, not because it was a corrugated metal roof.
¶ 14. In July 2010, Price and Canton Roofing entered an agreed stipulation, which stated that of the $26,803.50 that Price owed them, Price would only have to pay $22,500. In September 2010, Canton Roofing gave the trial court notice that Price “had paid monies ... sufficient to satisfy Price’s obligations” under the June 16, 2010 order. Canton Roofing then requested payment from Wells. In January 2011, a hearing[6] was held on Wells’s motion to reconsider. The trial judge stated the replacement, instead of repair of the roof, was outside the scope of the September 2009 order, and that it was essentially done ex parte. An agreed order was entered allowing Canton Roofing to intervene in the case.
¶ 15. On June 6, 2011, the bench trial which had been suspended in January 2008 resumed. Importantly, there is no transcript in the appellate record of this trial. On June 10, 2011, the trial court entered a final judgment, finding:
[T]he original contract price was $268,552.00, which was later increased to a total of $842,060.00 through five change orders. Wells paid Price a total of $294,864.90 through draws on a construction loan and personal checks. Immediately following a parting of the ways, Price presented Wells a bill for “extras” totaling $59,378.10. Wells admitted that some of the extras were proper but denied most. Wells paid for some items that the contract called for Price to pay and is entitled to credits or offsets. Wells paid to correct some deficiencies in Price’s work. Price corrected and paid to correct other deficiencies in their work. Some deficiencies remained in Price’s work at the end of the day, although the only testimony as to dollar amounts of these was not significant.
The court finds that Wells is entitled to credits and offsets that negate any remaining amounts owed to Price for the construction contract and work performed. This includes the 40% portion of the [Canton Roofing] bill the court previously ordered Wells to pay. The court declines to reconsider or amend said previous order of June 16, 2010, which remains in full force and effect, for split payment of the . bill, which according to the evidence is on the high side for what the work should have cost, but is considering same in negating the remaining unpaid contract amounts and any further payments owed to Price.
On Wells’s counterclaim, the trial court found that Wells was not entitled to any additional amounts from Price. On June 21, 2011, the trial court clarified its previous order, stating:
By way of clarification, the previous order was not amended and remains in full force and effect, that means that Wells is still ordered to pay 40% of the [Canton Roofing] bill; in the court’s final ruling in Wells’[s] favor on Price’s claim for payments for the remaining contract balance and “extras,” Wells was given consideration for certain credits and offsets, which included this; Wells is still responsible for the 40% of the Canton [Roofing] bill as previously ordered and not changed.
¶ 16. From these orders, Wells appeals, raising one issue: whether the trial court erred when it “taxed” her with forty percent of the cost to replace the roof.
*1256 STANDARD OF REVIEW
¶ 17. “The existence of a contract and its terms are questions of fact to be resolved by the fact-finder, whether a jury or a judge in a bench-trial.” Anderson v. Kimbrough, 741 So.2d 1041, 1045 (¶ 12) (Miss.Ct.App.1999). “A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor.” Wilson v. Greyhound Bus Lines, Inc., 830 So.2d 1151, 1155 (¶ 9) (Miss.2002). The reviewing court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard. Id. Questions concerning the construction of contracts, however, are questions of law that are reviewed de novo. G.B. ‘Boots” Smith Corp. v. Cobb, 860 So.2d 774, 777 (¶ 6) (Miss.2003).
DISCUSSION
¶ 18. Wells maintains that the central question in this case is whether the construction contract required Price to install a standing-seam metal roof. We find that it did, but the answer to this “central question” does not resolve the appeal in her favor. Taxing Wells forty percent of the cost of the replacement roof may have been erroneous, but we cannot reverse the trial court’s judgment, as Wells did not provide this Court with portions of the record to refute the trial court’s finding that it had given her credit, or an offset, in this amount against the remaining balance she owed to Price.
¶ 19. The parties also disagree on the scope of the issues on appeal. Price and Canton Roofing (Appellees) argue that Wells limited the issue on appeal merely to whether the trial court erred in finding she must pay forty percent of the cost to replace the roof, because this is the only matter she mentions in her “statement of the issue” in her brief.[7] In support of its argument, Price cites Mississippi Rule of Appellate Procedure 28(3), which states any issue not identified by counsel cannot be argued on appeal. The Appellees also argue that this Court must review the trial court’s findings solely for manifest error and not by de novo review, because the issue on appeal is limited to the trial court’s factual findings and not the validity, interpretation, and enforcement of the contract. We disagree.
¶ 20. Wells argues that the interpretation of the contract is at issue on appeal and fully identified in her brief, which discusses the following topics: Price’s contracting to install a standing-seam roof and failing to do so; Price’s breaching its contractual obligations to Wells; and Wells’s receiving the benefit of the contract when Canton Roofing installed the standing-seam metal roof. We agree these topics deal with the interpretation and performance of the contract, which are matters of law, and go beyond whether the trial court erred in finding Wells must pay forty percent of the roof-replacement cost. Accordingly, our standard of review will include both whether there was manifest error in the trial court’s factual findings as to the contract’s terms, as well as a de novo review of the construction of the contract at issue. See G.B. “Boots” Smith Corp., *1257 860 So.2d at 777 (¶ 6); Wilson, 880 So.2d at 1155 (¶ 9).
¶ 21. We proceed to discuss the various arguments raised on appeal by the parties.
I. Interpretation of the construction contract
¶ 22. Wells argues that when Canton Roofing replaced the standing-seam metal roof, she finally received the benefit of the bargain for which she had contracted and paid. The Appellees respond that what Wells originally contracted for is not subject to review on appeal because Wells limited the issues to the propriety of the forty percent tax. While the trial court did not make a specific finding on this matter, our de novo review of the record shows Wells originally contracted for and paid for a standing-seam roof.
¶ 23. The standard for the interpretation of contracts is well established. The first step is to determine if the contract is ambiguous; if it is not, then it must be enforced as it is written, and parol evidence will not be considered. Epperson v. SOUTHBank, 93 So.3d 10, 16 (¶ 17) (Miss.2012) (citing Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752 (¶ 10) (Miss.2003); Turner v. Terry, 799 So.2d 25, 32 (¶ 16) (Miss.2001)). “[T]he express wording of the contract as a whole” is reviewed. Id. (citing Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (¶ 8) (Miss.2010)). Further, regarding construction contracts, “[i]t is generally held that where a building contract refers to plans and specifications and so makes them a part of it, the contract is to be construed as to its terms and scope together with the plans and specifications.” Roberts v. Robertson, 232 Miss. 796, 802, 100 So.2d 586, 588 (1958).
¶ 24. The construction contract unambiguously states a standing-seam metal roof was part of the work Price was to perform under the contract; therefore, we need look no further than the express wording of the contract for the parties’ original intent. The original plans and specifications from 2002, attached to the contract and a part of this record, specify a “standing-seam metal roof.” This type of roof was part of the original contract price of $268,552 for the entire remodeling project, which Wells compensated Price to perform. It was not added in the subsequent “change orders,” which increased the price of the contract. Also, the Bat-taglia report, which the trial court adopted in its April 2009 order, confirmed that the specifications for the Wells remodel called for a standing-seam roof, but instead, Price installed a cheaper corrugated roof system, which leaked. Therefore, Wells did not, as Canton Roofing argues, receive a roof of greater value than what she was originally entitled to receive. We conclude the construction contract unambiguously entitled Wells to a standing-seam metal roof, which she did not initially receive.
II. Taxing Wells forty percent of the total cost for the replacement roof
¶ 25. After Canton Roofing installed the standing-seam metal roof, the trial court modified its September 2009 order, with Price to pay only sixty percent of the invoice instead of the entire amount, and Wells to pay the remainder. The trial court does not specifically explain its reasoning, stating it modified the previous order for “good cause.” In its brief, Price argues that the trial court properly assigned Wells forty percent of the invoice because Wells’s counsel unilaterally proceeded to replace the roof without the trial court’s authorization, and because Price had no notice. Because of these actions, Price objects to paying for the more expensive replacement roof.
*1258 ¶ 26. We note the trial court’s order of September 17, 2009, appoints Canton Roofing “to make all necessary repairs, replacements and to do all things necessary to ensure [the Wells’s] roof is satisfactory, watertight and meets all good workmanlike industry standards.” Price was ordered to pay “all costs and expenses associated with said roof work.” As Wells notes, there were no price limitations in the order for how Canton Roofing was to make the Wells’s roof watertight and meet industry standards. In October 2009, Canton Roofing informed Wells’s counsel that it could not repair the existing corrugated metal roof so as to make the roof watertight, and instead recommended replacing it with the standing-seam metal roof at a cost of $41,750.
¶ 27. However, more than a year later, during the January 24, 2011 hearing on Wells’s motion to reconsider, the trial judge explained that he was “shocked” to find out that Wells’s entire roof was replaced, “because it was never, ever, ever indicated or discussed or anything up until this point. It was all about repairing what was there and what needed to be done.... [T]here was never this idea about replacing the entire roof.”
¶ 28. The September 2009 order is ambiguous as to whether it authorizes replacing the entire corrugated metal roof. In its June 2010 order, the trial court noted that a further hearing should have taken place to determine if the roof really needed to be replaced once Canton Roofing recommended it. However, the trial court did not hold such a hearing, even after it learned of the replacement.
¶ 29. Before the trial court entered its June 16, 2010 order deciding that Price and Wells were to split the cost of the new roof, the trial court should have determined if a new roof was the proper remedy for Price’s breach of contract. “The measure of damages for breach of contract and property damage can be either the reasonable cost of replacement or repairs, or diminution in value.” Check Cashers Express, Inc. v. Crowell, 950 So.2d 1035, 1042 (¶ 19) (Miss.Ct.App.2007) (citing Bell v. First Columbus Nat’l Bank, 493 So.2d 964, 970 (Miss.1986)). “The plaintiff must prove either of these measures with a reasonable certainty and the damage award must not unjustly enrich the plaintiff.” Id. Generally, specific performance has been regarded as a remedy for breach of contract but not a remedy of right. Houston v. Willis, 24 So.3d 412, 418 (¶ 19) (Miss.Ct.App.2009) (citing Frierson v. Delta Outdoor, Inc., 794 So.2d 220, 225 (¶ 13) (Miss.2001)). The remedy of specific performance falls within sound judicial discretion, but “[¡Judicial discretion notwithstanding, where a contracting party can feasibly be given what he bargained for, specific performance is the preferred remedy.” Id. If replacement were the only way Wells would receive her benefit of the bargain with Price, Price should have been ordered to pay the entire cost of replacement, because Wells had contracted, and paid for, a standing-seam roof.[8] If the *1259 case had been appealed at this point, we would have remanded for a hearing to determine if a new roof was the proper remedy, and if Price should pay for the entire roof; instead, the trial court completed the bench trial in June 2011.
¶ 30. The final judgment found:
Wells is entitled to credits and offsets that negate any remaining amounts owed to Price for the construction contract and work performed. This includes the k0% portion of the [Canton Roofing] bill the court previously ordered Wells to pay. The court declines to reconsider or amend said previous order of June 16, 2010, which remains in full force and effect, for split payment of the bill, which according to the evidence is on the high side for what the work should have cost, but is considering same in negating the remaining unpaid contract amounts and any further payments owed to Price.
(Emphasis added.) The burden rests upon the appellant to provide a record that contains all information needed for an understanding of matters relied upon for reversal on appeal. Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973) (citing Willenbrock v. Brown, 239 So.2d 922, 925 (Miss.1970)). We “may not act upon or consider matters which do not appear in the record and must confine [ourselves] to what actually does appear in the record.” Dew v. Langford, 666 So.2d 739, 746 (Miss.1995) (quoting Shelton, 279 So.2d at 644). We will presume the rulings of the trial court are correct, “unless the actual record supports the contrary view.” Id.
¶ 31. Wells’s arguments on the propriety of the forty percent payment ultimately fail because she did not provide the Court with an adequate record from which we can reverse. The trial court did not specify what the credits and offsets were in finding that Wells did not owe Price any further funds. We note Wells did not file a Mississippi Rule of Civil Procedure 52 request for more specific findings of fact. The trial court appeared to give Wells a forty percent credit/offset to what Wells would have otherwise owed to Price for the extra construction work. There is nothing in the record to show otherwise. Additionally, but for the sixty-forty percent split of costs on the replacement roof, Wells may have owed Price on the extra work done; we cannot make this determination from the record presented on appeal.
¶ 32. Wells did not include in the record any transcripts of the bench trial in March 2008, the June 2010 telephonic hearing on Price’s motion to clarify, or most importantly, the conclusion of the bench trial in June 2011. Because Wells did not provide us an adequate record, we cannot reverse the trial court’s judgment — there is nothing to show the offsets and credits noted in the final judgment were not already given to Wells. Accordingly, we cannot find the trial court in error and must assume the trial court’s ruling is correct.
CONCLUSION
¶ 33. This Court agrees with Wells that she was entitled to the standing-seam metal roof because she originally contracted for it. If replacement of the roof was the only way to give Wells the benefit of her bargain, the trial court should have ordered Price to pay for the entire cost of replacement. However, because Wells did not provide this Court with an adequate *1260 record, we cannot reverse the trial court’s final judgment regarding certain credits and offsets already given to her for the roof. Therefore, we affirm.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF AMITE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. By agreed order and for purposes of appeal, Canton Roofing was allowed to intervene in this case in 2011.

. Price claims Wells’s requested changes increased the original contract amount by $135,088.69; Wells claims her changes increased the amount by only $74,512.

. There is no transcript in the appellate record for this trial.

. There is no transcript of this hearing in the record.

. In her brief, Wells’s counsel denied that she instructed Canton Roofing to proceed with installing the new roof; however, at a January 2011 hearing, she acknowledged that she did tell Canton roofing to "[g]o according to the court order.”

. There is a transcript in the record of this hearing.

. In her brief, Wells’s statement of the issue reads: "Whether the lower court erred when it taxed Danette Wells with 40% of the necessary roof replacement and repairs made to her home by [Canton Roofing] after it ordered [Price] to bear all costs and expenses incurred by [Canton Roofing] to make all ‘necessary repairs, replacements and to do all things necessary to ensure Wells's roof was watertight and met all good workmanlike industry standards’ on September 17, 2009.”

. Price maintains taxing Wells forty percent was proper because Price’s counsel did not receive notice of Canton Roofing’s recommendation and proposal to replace the roof-not because of an ambiguous order. However, the record shows Price may have received notice. Wells’s counsel sent an email to Price's counsel on October 8, 2009, with the attached Canton Roofing replacement proposal, approximately two hours after she received the proposal from Canton Roofing. Price denies receipt of this or any email regarding the estimate to replace the roof. Also, even though Wells’s counsel sent an invoice by mail and facsimile to Price for Canton Roofing's partial payment in January 2010, Price claims it was not aware that the roof was replaced until February 22, 2010. *1259 However, had a hearing been conducted by the trial judge following the replacement of the roof, Price would have been given notice and an opportunity to challenge the necessity of replacing the entire roof.