# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01674-COA

RICKEY MCCARLEY                                                    APPELLANT

v.

KELLIE MCCARLEY                                                     APPELLEE

DATE OF JUDGMENT:               12/19/2016
TRIAL JUDGE:                    HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:      PRENTISS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        DAVID O. BUTTS JR.
                                WILLIAM WAYNE HOUSLEY JR.
ATTORNEY FOR APPELLEE:          GREG E. BEARD
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED - 08/21/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Rickey McCarley appeals the Prentiss County Chancery Court's judgment awarding his wife, Kellie McCarley, separate maintenance. Rickey asserts the following assignments of error: (1) the chancellor erred by failing to make the transcript of her telephonic hearing part of the record and (2) the chancellor erred in awarding Kellie separate maintenance. Finding no error, we affirm the chancellor's judgment.

## FACTS

¶2.     Rickey and Kellie were married in November 1979 and separated in October 2015. At the time of their separation, Rickey and Kellie had two adult children.

¶3.     On February 5, 2016, Rickey filed a complaint for divorce from Kellie on the grounds

of constructive desertion, habitual cruel and inhuman treatment, and irreconcilable differences. Rickey also set forth his specific requests regarding the division of marital property.

¶4. On February 11, 2016, Kellie filed a complaint alleging that she and Rickey separated due to Rickey's adultery and habitual cruel and inhuman treatment. Kellie requested that the chancellor award her temporary alimony and permanent separate maintenance during the term of the separation, as well as continued coverage under Rickey's insurance policy and one-half of Rickey's retirement. On March 28, 2016, the chancellor entered an order consolidating the cases. The chancellor then entered a "Temporary Agreed Order" on June 15, 2016, requiring Rickey to maintain Kellie's health insurance and pay her $250 every two weeks; the chancellor also granted Kellie exclusive use and possession of the marital home.

¶5. At a trial held on October 24, 2016, the chancellor heard testimony from Kellie and Rickey, as well as Rickey's brother, Roger McCarley, and Penny Gravedoni, Rickey's girlfriend.[1] After the trial, the chancellor informed the parties that although she would like to make a ruling from the bench that same day, she needed time to review the exhibits presented by the parties. The chancellor then scheduled a telephone conference with the attorneys, explaining that she would give her opinion at that time and also ask one of the attorneys to prepare the order. The transcript of the telephone conference does not appear in the record.

¶6. On December 2, 2016, the chancellor entered an order denying Rickey's complaint

---

[1] We will discuss this testimony at length later in this opinion.

2

for divorce on the ground of habitual cruel and inhuman treatment. However, the chancellor found that Kellie met her burden of proving that she was entitled to separate maintenance. The chancellor awarded Kellie the marital home and $500 per month for spousal support. The chancellor also divided the other marital property.

¶7. On December 19, 2016, the chancellor entered an amended order clarifying that because she found Kellie "is without material fault in the separation and that [Rickey] abandoned [Kellie] and has refused to provide any support," Kellie met her "burden of proof necessary to support her claim for separate maintenance."

¶8. Rickey timely appealed the chancellor's order.

## STANDARD OF REVIEW

¶9. "This Court employs a limited standard of review when considering domestic-relations cases." *Jackson v. Jackson*, 114 So. 3d 768, 773 (¶10) (Miss. Ct. App. 2013). On appeal, we will not disturb a chancellor's findings if they are "supported by substantial credible evidence unless the chancellor abused . . . her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Knighten v. Hooper*, 71 So. 3d 1208, 1209 (¶5) (Miss. Ct. App. 2011). We review questions of law de novo. *Id*.

## DISCUSSION

### I. Telephone Hearing

¶10. Rickey argues that the chancellor erred in failing to direct that the transcript from the telephone opinion be made part of the record. Rickey asserts that the amended order only states the chancellor's conclusions in very abbreviated form and contains none of the

3

underlying facts nor applies the law to those facts.

¶11.    In support of his argument, Rickey cites to Uniform Chancery Court Rule 4.02, which provides that a chancellor's opinion may be given orally or in writing.  If the chancellor pronounces her opinion orally, then "it shall be taken down by the [c]ourt [r]eporter who shall, when directed by the [c]ourt, transcribe the same and submit it to the [c]hancellor for correction and approval."  UCCR 4.02.  Rule 4.02 mandates that whether the opinion rendered is made orally or in writing, it "shall be filed among the papers and become a part of the record in the cause without any order or direction to that effect."  *Id*.

¶12.    We recognize that Rule 52(a) of the Mississippi Rules of Civil Procedure states that in cases tried without a jury, "the court may, and **shall upon the request of any party to the suit** or when required by these rules, **find the facts specially and state separately its conclusions of law** thereon and judgment shall be entered accordingly."  (Emphasis added).

¶13.    Similarly, Uniform Chancery Court Rule 4.01 provides "In all actions **where it is required or requested**, pursuant to [Rule] 52, the [c]hancellor **shall find the facts specially and state separately his conclusions of law** thereon.  The **request must be made either in writing**, filed among the papers in the action, or dictated to the [c]ourt [r]eporter for record and **called to the attention of the [c]hancellor**."  (Emphasis added).

¶14.    At the conclusion of the hearing in the present case, the chancellor scheduled a telephone conference with the attorneys.  The chancellor explained that she would give her opinion on the matter via telephone and would also request one of the attorneys to prepare the order at that time.  The record contains no transcript from the telephone conference, but

4

the record does contain the chancellor's written order and amended order setting forth her ruling.

¶15. In the chancellor's amended order, she denied Rickey's complaint for divorce on the ground of habitual cruel and inhuman treatment based on "lack of proof." The chancellor also found "that [Kellie] is without material fault in the separation and that [Rickey] abandoned [Kellie] and has refused to provide any support." The chancellor then determined that Kellie "has met the burden of proof necessary to support her claim for separate maintenance." The record contains no request by Rickey or his attorney for the chancellor to find specially and state separately her conclusions of law.

¶16. We recognize that "[t]he burden rests upon the appellant to provide a record that contains all information needed for an understanding of matters relied upon for reversal on appeal." *Wells v. Price*, 102 So. 3d 1250, 1259 (¶30) (Miss. Ct. App. 2012). This Court cannot consider or act upon matters not included in the record; rather, we "must confine ourselves to what actually does appear in the record." *Id*. In *Wells*, 102 So. 3d at 1259 (¶32), the appellant failed to include in the record the transcripts from a bench trial and a telephone hearing, as well as the judgment entered after a separate bench trial. This Court affirmed the trial court's judgment, explaining that "[b]ecause [the appellant] did not provide us an adequate record, . . . we cannot find the trial court in error and must assume the trial court's ruling is correct." *Id*.[2]

---

[2] *Cf. Daley v. Daley*, 909 So. 2d 106, 107 (¶8) (Miss. Ct. App. 2005). In *Daley*, the record failed to contain a transcript of the proceedings before the chancellor or any factual or legal foundation for the chancellor's decision below. *Id*. This Court acknowledged that Uniform Chancery Court Rules 4.01 and 4.02 provide that the chancellor can "create either

¶17.    In *Baggett v. Baggett*, 246 So. 2d 887, 889 (¶21) (Miss. Ct. App. 2017), this Court

found no merit to the appellant's claim that the chancellor erred by failing to make findings

of fact and conclusions of law in his judgment denying the appellant's complaint for divorce.

The *Baggett* court held that not only did the appellant fail to request that the chancellor make

findings of fact and conclusions of law, but the facts of the case "were neither hotly

contested, greatly in dispute, nor complex so as to require the chancellor to [make findings

of fact and conclusions of law] without a request." *Id*. at (¶19) (citing *Tricon Metals &*

*Servs., Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987)).

¶18.    Similarly, in *Turner v. Turner*, 744 So. 2d 332, 337 (¶22) (Miss. Ct. App. 1999), the

appellant argued that the chancellor erred by failing to make separate findings of facts and

conclusions of law or on-the-record findings regarding his award of child support.  Upon

review, this Court found no error, explaining that "neither party requested in writing, or in

any other acceptable manner, that the chancellor issue separate findings of fact or

conclusions of law." *Id*. at (¶26).

¶19.    In the case before us, the record contains the transcript of the trial testimony from

Rickey, Kellie, Penny, and Rickey's brother, Roger.  Although the record does not contain

a transcript of the telephone conference with the attorneys where the chancellor made her

ruling orally, the record does contain the chancellor's amended written order reflecting her

aforementioned ruling.  Furthermore, Rule 4.02 mandates that if a party requests the

an oral or a written record at his discretion," but "if the chancellor opts for an oral opinion,
it must be transcribed for the record." *Id*. at 107-08 (¶9).  This Court then remanded the case
back to the chancellor with instructions for the chancellor to create a record of his factual
findings and conclusions of law. *Id*. at 108 (¶10).

chancellor to find the facts specially and state separately her conclusions of law, "[t]he request must be made either in writing, filed among the papers in the action, or dictated to the [c]ourt [r]eporter for record and called to the attention of the [c]hancellor." No such request by either party appears in the record before us. This issue lacks merit.

## II. Separate Maintenance

¶20. Rickey also argues that the chancellor erred in determining that Kellie did not materially contribute to the separation, and therefore this Court should reverse the chancellor's award of separate maintenance to Kellie.[3] Rickey maintains that the evidence at trial showed that Kellie's lack of intimacy and hostility towards Rickey over the years served as a material and contributing cause to their separation.

¶21. We review a chancellor's award of separate maintenance for an abuse of discretion. *Jackson*, 114 So. 3d at 773 (¶12). As stated, we will not disturb a chancellor's findings if they are "supported by substantial credible evidence unless the chancellor abused . . . her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Knighten*, 71 So. 3d at 1209 (¶5).

¶22. This Court has held that "[a] chancellor may award separate maintenance when (1) the parties have separated without fault by the wife and (2) the husband has willfully

---

[3] In his appellate brief, Rickey does not attack the amount of separate maintenance the chancellor awarded Kellie; rather, Rickey argues that because Kellie materially contributed to the separation, the chancellor improperly awarded her separate maintenance. Since Rickey does not attack the amount of the separate maintenance award, we will refrain from addressing the six factors listed in *Williams v. Williams*, 224 So. 3d 1282, 1285 (¶9) (Miss. Ct. App. 2017), that the chancellor must consider when determining the amount of separate maintenance to award.

abandoned the wife and refused to support her." *Williams v. Williams*, 224 So. 3d 1282, 1285 (¶9) (Miss. Ct. App. 2017) (citing *Jackson*, 114 So. 3d at 775 (¶17)). In order to receive an award of separate maintenance, a wife does not have to be blameless, "but her (mis)conduct must not have materially contributed to the separation." *Id*. (quoting *Daigle v. Daigle*, 626 So. 2d 140, 145 (Miss. 1993)). In other words, because an award of separate maintenance arises from equitable principles, "equity requires that . . . the requesting spouse . . . show [that] no significant conduct on her part negatively impacted the marriage or contributed to the separation." *Jackson*, 114 So. 3d at 774 (¶16);[4] *see also King v. King*, 246 Miss. 798, 152 So. 2d 889, 891 (1963) (holding that where a wife's fault regarding the separation "is equal to or greater than that of her husband," it may serve as a defense to the wife's suit for separate maintenance.).

¶23.    In *Jackson*, 114 So. 3d at 776 (¶21), we reversed the chancellor's award of separate maintenance to the wife, Linda, after finding that the chancellor failed to first determine whether Linda materially contributed to the separation. This Court explained that "[t]he equitable relief of separate maintenance requires the requisite evidence of a separation without fault of the wife as well as evidence showing no significant misconduct on her behalf materially contributed to the separation of the parties." *Id*. The chancellor's findings below reflected that "Linda asserted that she wanted to work things out with [her husband,] Paul; that she still loved him; and that she would reconcile if Paul met certain unspecified

_____

    [4] In *Jackson*, this Court also stated that the wife "bore the burden to establish in the record a present willingness to reconcile and to show that she had not engaged in significant marital misconduct contributing to the separation." *Jackson*, 114 So. 3d at 776 (¶20).

conditions." *Id*. at (¶20). This Court explained, however, that Linda bore the burden of establishing in the record not only a "present willingness to reconcile," but also "that she had not engaged in significant marital misconduct contributing to the separation." *Id*. This Court's review of the record revealed that Paul separated from Linda after a five to six year period during which Linda "adamantly proclaim[ed] no love for Paul; secretly conduct[ed] financial dealings; fail[ed] to provide companionship or other support for the relationship; . . . demand[ed] [Paul] leave the marital home[;] [and] . . . repeatedly reminded [Paul] that the marital house and land were hers and that he held no interest in the property." *Id*. at 777-78 (¶26). This Court determined that Linda's actions during this time period constituted marital fault and ultimately held that Linda failed to provide substantial evidence to show that "no significant misconduct on her behalf contributed to the separation." *Id*.

¶24.    In *Tackett v. Tackett*, 967 So. 2d 1264, 1267 (¶9) (Miss. Ct. App. 2007), we found no error in the chancellor's award of separate maintenance to the wife, Kim. This Court reiterated that a "wife need not be totally blameless, and an award of separate maintenance may still be appropriate so long as the wife's conduct did not materially contribute to the separation." *Id*. In *Tackett*, Kim admitted that "she was partly to blame for the couple's separation[,] but [she] maintained that [her husband] Tim was more at fault because he left" the marriage. *Id.* at (¶10). This Court reviewed the trial testimony from both parties, which reflected that both money and a lack of a sexual relationship contributed to the separation. *Id*. This Court also acknowledged Tim's testimony that he and Kim mostly argued about Kim's excessive spending, but the Court found that Tim failed to provide evidence to support

this claim. *Id.* The record also showed that Tim refused Kim's suggestion to attend marriage counseling. *Id.* This Court ultimately held that after reviewing the record, "we cannot say that the trial court manifestly erred in finding that Kim did not substantially contribute to the separation, or that such a decision is not supported by substantial evidence." *Id.*

¶25. In the case before us, the chancellor's amended order sets forth her finding that Kellie "is without material fault in the separation and . . . [Rickey] abandoned [Kellie] and has refused to provide any support. Therefore, [Kellie] has met the burden of proof necessary to support her claim for separate maintenance." The record reflects that at trial the chancellor heard testimony from Kellie, Rickey, Penny, and Rickey's brother, Roger. Kellie testified that she and Rickey got married in November 1979 and separated in October 2015, after thirty-six years of marriage. Kellie stated that she would characterize the last five years of her marriage as "okay," explaining that although they "might not have had the happiest marriage," they were "content." Kellie admitted that, although she and Rickey had a lot of problems in their marriage, she ultimately believed "that marriage is for better and worse, until death do us part." Kellie testified that she and Rickey met in April 2016 to discuss whether they should reconcile or seek a divorce. Kellie stated that Rickey informed her that "he would think about what we discussed," but she "never heard from him."

¶26. Kellie testified that during the last year of their marriage, Rickey began drinking alcohol excessively. Kellie admitted that Rickey's drinking did not affect his performance at work, but she explained that most of his drinking occurred on the weekends or on his days off. Kellie also testified that she discovered bills for a credit card and a loan. Kellie

10

explained that she was not previously aware that Rickey had taken out a loan or obtained a new credit card before her discovery of these documents.

¶27. Regarding physical affection, Kellie testified that she was affectionate with Rickey and often hugged and patted him. However, Kellie testified that she and Rickey had not engaged in a sexual relationship since early 2015 and that they slept in separate bedrooms. Kellie stated that when she broached the subject with Rickey, he informed her that his medication prevented him from having an erection. Kellie testified that she attended one of Rickey's doctor's appointments where he explained the issue to the doctor, and the doctor responded that Rickey had to choose between "either tak[ing] some medicine to keep him alive or hav[ing] sexual intercourse." Kellie admitted that she did not know if Rickey was still taking the medicine.

¶28. Roger characterized Rickey and Kellie's marriage as "not happy." Roger testified that he never observed Kellie expressing affection towards Rickey. Roger also testified that Rickey was unfaithful to Kellie on a separate occasion earlier in their marriage.

¶29. Rickey opined that his and Kellie's marriage was not salvageable. Rickey testified that he and Kellie had not been physically affectionate over the last five years of their marriage, stating, "Every time I went to kiss her, she would turn her cheek on me." Rickey testified that Kellie asked him to give up alcohol but he refused, explaining "I didn't want to give up the beer."

¶30. Rickey testified that when he left the marital home, he "wasn't interested in another woman," and he did not leave "because of another woman." Rickey maintained that he was

11

not romantically involved with Penny prior to his and Kellie's separation in October 2015, and he testified that he did not begin dating Penny until after he had moved out of the marital home. He admitted that he and Penny worked together for years, and that they had talked on the phone for "one or two years" prior to his and Kellie's separation. Rickey stated that he did not have sexual relations with Penny until after he moved in with her. Penny also testified and confirmed that she and Rickey did not become romantic until December of 2015.

¶31. After reviewing the testimony at trial, we find that the record contains substantial credible evidence supporting the chancellor's finding that Kellie did not materially contribute to the separation. We therefore affirm the chancellor's judgment. *Knighten*, 71 So. 3d at 1209 (¶5).

¶32. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**