FAIR, J.,
for the Court:
¶ 1. After a five-day divorce trial, Darlene and Cotton Fore found themselves still married. Each had accused the other of adultery and sought fault divorces solely on that ground. The chancellor found that neither party had established adultery and denied both of their claims. Both parties appeal. Because the chancellor’s decision was one of fact and was within his discretion, we affirm.
FACTS
¶ 2. Darlene, fifty-three years old at trial, and Cotton, then seventy years old, had married on August 1, 1998. Darlene permanently left the marital home eleven years later and filed her complaint for divorce in October 2009. Cotton counterclaimed in January 2010.
¶ 3. The divorce was vigorously litigated, as evidenced by the twenty-five single-spaced pages of the trial court docket. For eighteen months the parties enthusiastically pursued all means of discovery allowed by the Mississippi Rules of Civil Procedure. Private investigators were hired. Contempt pleadings, motions for continuances, mediation attempts, amendments of pleadings, and volumes of subpoenas were filed, pursued, and argued.
¶ 4. Because each party sought a divorce solely on the ground of the other’s alleged post-separation adultery,[1] the chancellor bifurcated the trial and tried grounds first. Five days of trial produced a transcript well in excess of 800 pages.
¶ 5. Aided by briefs, speaking pleadings, and proposed findings of fact and conclusions of law, the chancellor filed a seven-page final judgment on July 6, 2011. In it, he denied a divorce to both parties and denied separate maintenance to Darlene because she averred that she would never return to living with Cotton under any circumstances. Both sides sought reconsideration, which was denied, and both parties thereafter appealed.
STANDARD OF REVIEW
¶ 6. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.” Samples v. Davis, 904 So.2d 1061, 1063-64 (¶9) (Miss.2004). We “will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id. at 1064 (¶ 9) (quoting Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996)). This Court “views the facts of a divorce decree in a light most favorable to the appellee and may not disturb the chancery decision unless manifestly wrong or unsupported by substantial evidence.” Fisher v. Fisher, 771 So.2d 364, 367 (¶ 8) (Miss.2000). Questions of law, however, are reviewed de novo. Amiker v. Drugs for Less, Inc., 796 So.2d 942, 945 (¶ 7) (Miss.2000).
DISCUSSION
¶ 7. Most reported cases addressing adultery as a ground for divorce deal with judgments granting a divorce — not denial of divorce on that ground. The most recent reported decision by the Mississippi Supreme Court addressing a chancellor’s denial of divorce on the ground of adultery is Davis v. Davis, 832 So.2d 492 (Miss. *139 2002). The question was whether a post-separation “one night stand” was sufficient to support a divorce on the ground of adultery. The supreme court held that it was. Id. at 496 (¶ 15). In that case, as in many in recent years, sexual relations outside of marriage were readily admitted.
¶ 8. A few months prior to Davis, in Hensarling v. Hensarling, 824 So.2d 583 (Miss.2002), the supreme court upheld a grant of divorce on the ground of adultery where sexual involvement outside of marriage was denied, as in this case. That case contains the supreme court’s most recent and perhaps most thorough summary of the law on adultery and the evidence necessary to support a divorce on that ground:
This issue lies within the discretion of the chancellor as the trier of fact and must be decided based on the weight and sufficiency of the evidence. The standard of proof in cases involving allegations of adultery as grounds for divorce was clearly and succinctly stated by this Court in Holden v. Frasher-Holden, 680 So.2d 795 (Miss.1996). In that case we stated as follows:
“A charge of adultery may be grounds for divorce upon a showing of either an infatuation for a particular person of the opposite sex or a generally adulterous nature on the part of the defendant.” [McAdory v. McAdory, 608 So.2d 695, 700 (Miss.1992).] There must be evidence of one or the other before a divorce may be granted on these grounds. Id. In [Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995) ], this Court recited the proper evidentiary standard to be applied to the proof set forth by the complaining party, as articulated in [Dillon v. Dillon, 498 So.2d 328, 330 (Miss.1986) ]: In Mississippi one seeking a divorce on the grounds of adulterous activity must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination. Owen v. Gerity, 422 So.2d 284, 287 (Miss.1982); Magee v. Magee, 320 So.2d 779, 783 (Miss.1975); Rodgers v. Rodgers, 274 So.2d 671, 673 (Miss.1973). Where the plaintiff relies on circumstantial evidence as proof for his allegations, he or she retains the burden of presenting satisfactory evidence sufficient to lead the trier of fact to a conclusion of guilt. Rodgers, 274 So.2d at 673. However, such evidence need not prove the alleged acts beyond a reasonable doubt and the plaintiff is not required to present direct testimony as to the events complained of due to their secretive nature. Bunkley & Morse’s Amis, Divorce & Separation in Mississippi, §§ 3.09(5) (1957). Nevertheless, the burden of proof is a heavy one in such cases because the evidence must be logical, tend to prove the facts charged, and be inconsistent with a reasonable theory of innocence. Owen, 422 So.2d at 287, citing and quoting Banks v. Banks, 118 Miss. 783, 79 So. 841 (Miss.1918). Brooks, 652 So.2d at 1116 (quoting Dillon, 498 So.2d at 330) (emphasis added).
Holden, 680 So.2d at 798.
We also held in McAdory “that the elements of infatuation or proclivity toward adulterous behavior must be supported by evidence of a reasonable opportunity to satisfy the infatuation or proclivity.” McAdory, 608 So.2d at 700. Brenda testified that she did not know Art Sharpe until after Ken had left home and filed for divorce and that she was never sexually involved with him. However, in this case there is substantial evidence in the record to support the *140 chancellor’s conclusion that proclivity and opportunity were present in the relationship between Brenda and Art Sharpe. The burden of proof was met with regard to this issue. As such, the chancellor’s finding of adultery is not clearly erroneous.
Hensarling, 824 So.2d at 594-95 (¶¶ 36-37) (emphasis in original, some citations omitted).
¶ 9. Turning to the facts of the case at hand, after Darlene left Cotton and the employ of Fore Trucking, she was called by Lucas Tillman, the owner of Tillman’s Heating and Air. Lucas said he understood Darlene knew Quickbooks, and he needed help with setting it up for his business. When she went to his office, she learned he was separated from his wife. Darlene knew both of the Tillmans previously, as a couple. Cindy Tillman had worked for her husband’s business, just as Darlene had worked for Cotton. Lucas and Darlene did not discuss their respective separations at the time.
¶ 10. After she reviewed Lucas’s records, Darlene told him she thought he ought to declare bankruptcy because records were in a shambles, he had problems with the Mississippi State Tax Commission and the Internal Revenue Service, and he had no money.
¶ 11. Darlene entered into a consulting agreement with Lucas, which contained a provision that she would advance and be repaid any funds required for software and other personalty. In what the chancellor described as “an unusual employer/employee relationship,” Darlene loaned $25,000 of her own money to Lucas’s business. She bought Saints tickets, spent a lot of time on the phone with Lucas, made loans to a member of his family, and visited his parents’ home. However, “[o]ther than a hug and a kiss in the courthouse hallway,” the chancellor found no proof of “romantic affection between the two.” Darlene went to Lucas’s home on two occasions late in the evening, but during one, his wife was present. And the other was documented by a private investigator who could not place Darlene inside the house, where Lucas’s children were also present. She and Lucas stated that they had talked alone in her car for ten or fifteen minutes. The private investigator’s notes did not contradict their statements.
¶ 12. On the other side of the aisle, Cotton admitted knowing Penny Fay Andrews, the former wife of one of his competitors. She had helped care for 900 of Cotton’s cows after Darlene and a nephew “got out of the cattle business,” leaving it to Cotton as the remaining interested party. Cotton had Penny’s cell phone number saved in his phone in 2007, and he made her one of twenty-two individuals to whom he left a relatively small portion of the residuary of his (very significant) estate.[2] Cotton talked to her many times on his cell phone, perhaps even more than Darlene talked to Lucas — which is to say, a lot. Penny may have attended the Kentucky Derby with Cotton and his friends, but there was no evidence of inclination and no evidence of any opportunity for Cotton to be alone with her on that occasion. A woman thought to be Penny caught a ride home on Cotton’s jet from the Derby and was seen holding his hand on the plane. Cotton also attended cookouts and parties when she was present, and he was twice seen in bars with someone called Penny.
¶ 13. There was testimony of only one incident in which the two were alone together, or so they thought. On that occasion, however, the headlights of a private investigator’s vehicle illuminated them as *141 they arrived at Cotton’s residence. The chancellor commented on this testimony as follows: “The investigators confronted Mr. Fore rather than staking out the residence and making an identification of the female leaving the home and determining how long she remained there.”
¶ 14. There is no doubt that the chancellor was well aware of the burden of proof for an adjudication of adultery. In his judgment he noted:
Adultery must be proved by clear and convincing evidence which in the civil context is a very high burden. It requires to a greater degree of certainty than the usual preponderance of evidence standard that is usually the requirement in civil litigation. Our Supreme Court has stated that before accepting a charge of adultery which so seriously affects the character of a person, the evidence must be clear and convincing. McAdory v. McAdory, 608 So.2d 695, 701 (Miss.1992)[.]
He went on to state:
Direct evidence is not necessary to prove adultery given the secretive nature of adulterous relationships, but if to be proven by circumstantial evidence, the accuser or plaintiff is faced with the heavy burden of convincing the trier of fact of the adulterer’s guilt through logical evidence that is inconsistent with a reasonable theory of innocence. The Court cites the parties to McAdory, cited above. Pool v. Pool, 989 So.2d 920 (Miss.Ct.App.2008) and Lister v. Lister, 981 So.2d 340 (Miss.Ct.App.2008).
Turning to the case at hand, he explained:
The evidence offered by both parties, while possibly meeting the lesser standard of preponderance of the evidence, falls short of meeting the higher standard of clear and convincing evidence which must be satisfied for each of the elements of adultery: (a) proof of an adulterous inclination and (b) an opportunity to consummate the inclination. The adulterous inclination may be proven by showing either an infatuation with a particular person or a general adulterous inclination.
¶ 15. Following these observations, the chancellor reviewed the evidence in some detail, setting out his impressions of the witnesses, their credibility, and their testimony. He discussed the weight he gave to specific information as well as why he discounted the testimony of some witnesses and relied more on the testimony of others. His discussion reflects a perception that Cotton and Darlene both became lonely and frustrated after their separation. They each developed what was claimed by both to be purely platonic relationships with members of the opposite sex. Evidence that they could be purely platonic included Cotton’s possible impotency and Lucas’s attempts to reconcile with his wife. The chancellor admitted the possibility of an adulterous inclination on the part of both parties, but found the evidence of opportunity to act on it was insufficient and certainly not clear and convincing. Both parties emphatically denied having sex with anyone other than each other and both asserted that their extramarital relationships were purely platonic in nature.
¶ 16. The chancellor concluded that their denials and assertions had merit and that “neither party has proved the other guilty of adultery.” As the judge of credibility, the chancellor is entitled to choose between reasonable interpretations of the evidence and the inferences that may be drawn therefrom. Bowen v. Bowen, 982 So.2d 385, 395 (¶42) (Miss.2008). After reviewing the record, we are satisfied that the trier of fact did not abuse his discretion, was not manifestly wrong, was *142 not clearly erroneous, and applied the proper legal standard in making his decision. We have no basis to reverse the chancellor’s judgment.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND AP-PELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. Darlene also requested separate maintenance if her divorce was denied.

. He first made very significant provision for his wife and children.