CARLTON, J.,
for the Court:
¶ 1. William Paul Jackson Jr. appeals the judgment of the Itawamba County Chancery Court that awarded Linda L. Jackson separate maintenance of $600 a month as well as the use of the home and surrounding land, the proceeds of an income-tax refund check, and other relief. On appeal, Paul raises the following issues: (1) whether Linda sufficiently met the jurisdictional requirements to sustain her separate-maintenance award; (2) whether the separate-maintenance award to Linda should be sustained absent any corroboration of Linda’s case, and whether Linda met her burden of proof for the case; and (3) assuming the award of separate maintenance is sustainable, whether the award of a monthly amount of support almost 150% higher than Paul’s net monthly income constitutes manifest error.
¶ 2. We find that the record reflects Linda failed to present evidence sufficient to sustain the award of separate maintenance. Therefore, the chancellor erroneously awarded the equitable relief of separate maintenance to Linda, due to the lack of requisite findings and evidence showing Linda’s marital conduct, or course of conduct, was not a material factor in causing the parties’ separation.[1] Since this failure of requisite evidence to support the separate-maintenance award is case-dispositive, we reverse and render.
FACTS
¶ 3. Paul and Linda married on March 5, 1991. After their marriage, Paul adopted Linda’s daughter, who is now over twenty-one years old. After approximately twenty years of marriage, Paul separated from Linda on or about March 5, 2011.
¶ 4. Paul testified that a cumulation of events led to his departure from the marital home. Paul testified that while they were married, Linda repeatedly demanded that he leave the marital home, and he stated that Linda repeatedly told him that the marital home and land were hers. Regarding the home and residential-property ownership, the record shows that Linda’s parents owned the home in which Paul and Linda resided, and the property deed reflects Linda as the sole owner of the real property subject to her parents’ life estate. Paul testified that Linda often told him that she did not love him, and he asserted that she rarely engaged in sexual relations with him. With respect to Linda’s conduct contributing to the parties’ separation, Paul further stated that Linda never cooked; she failed to assist with household duties; and she failed to support him in his farm work or other efforts. Paul asserts that Linda also kept their financial affairs separate, specifically citing to secretive behavior when she received approximately $200,000 from an inheritance and converted a large portion of the money into $100 bills, with no explanation as to where that money went. In explaining the cumulative effect of Linda’s behavior upon the marriage and his decision to leave the marital home in March 5, 2011, Paul testified: “[S]he kept telling me repeatedly over the period of years, and I finally decided I didn’t have to live like thatf;] I could go *771 and do something else.... [I]n March, I decided I didn’t have to do that. I just said, ‘There’s no use, I don’t have to live like this anymore.’ ” Following the separation, Paul testified that he rented and lived in a house in Mantachie, Mississippi, until he got an eviction notice in September 2011. Paul admitted to forming a relationship with Bonnie Jones in June 2011, months after his separation from Linda. Paul stated that following the eviction, he moved into a house with Bonnie.
¶ 5. We now turn to review the facts in the record pertaining to Paul’s marital fault contributing to the separation. Linda testified that Paul left the marital residence because of his affair -with Bonnie, which she contended started in December 2010. Linda claimed that Paul started sending text messages to Bonnie during the night, at one time sending her 217 text messages in approximately two days. Linda testified that Paul admitted to her his infidelity with Bonnie prior to leaving the marital home in March 2011. Linda further testified that she tried unsuccessfully to “get him to work things out,” and that she “was just devastated.” Linda denied telling Paul to leave the marital home, and she indicated that she remained open to reconciliation with Paul, albeit with certain conditions. Linda testified that Paul would need to receive “help for some issues that he’s had,” and that the “marriage would have to have some issues worked out, some relationship counseling!.]” The record provides no testimony or other evidence to explain what changes or conditions Linda required Paul to satisfy before she would reconcile with him.
¶ 6. Gail Whitaker, the sole witness other than the parties, testified that after separating from Linda, Paul rented a home from her in March 2011. Gail testi-lied that Paul only stayed in the home for a week or two. Gail stated that after Paul quit staying in the house, he went “to her home,” referencing Bonnie. Gail provided that she became aware of Paul and Bonnie’s extramarital relationship when Bonnie accompanied Paul to Gail’s home in July 2011, some months after the separation in March 2011.
¶ 7. On June 20, 2011, Linda filed a complaint against Paul for separate maintenance. In her complaint, Linda sought support, use and possession of the home and land, and other relief. Paul responded with his answer in which he denied Linda’s entitlement to relief, and with his counter-complaint in which he sought certain personal property and distribution of the parties’ recent income-tax refund check. Following a hearing on August 25, 2011, the chancellor timely rendered an opinion and judgment on November 16, 2011, in which he awarded Linda the $600-per-month separate-maintenance award currently disputed on appeal, the use of the home, the income-tax refund check, and other relief. Significantly, the chancellor’s order provides no findings as to whether Linda’s marital misconduct, or course of such conduct, materially contributed to the separation or not.[2]
¶ 8. After hearing the testimony and the evidence, the chancellor found Linda’s claims credible regarding the extramarital affair between Paul and Bonnie, and the chancellor also acknowledged evidence in the record showing Linda’s marital misconduct Paúl argued contributed to the separation. While the chancellor indeed acknowledged evidence in the record of Linda’s marital misconduct during the last five years of marriage, the chancellor provided no findings as to whether Linda’s marital misconduct contributed, materially *772 or otherwise, to the separation. The chancellor acknowledged the following evidence of Linda’s marital misconduct: lack of companionship and consortium; failure to contribute to household duties; and secretive financial dealings. The chancellor’s decision even acknowledged Linda’s failure to disclose her assets and separate property to the court in her Uniform Chancery Court Rule 8.05 financial statement, wherein Linda failed to disclose her separate remainder interest in real property, her business-ownership interest, the residence provided to her at no cost, and her ownership of two trailers. The chancellor also acknowledged Linda diverted $97,000 of approximately $200,000 from an inheritance for unknown uses, and she disclosed none of this money in her Rule 8.05 financial statement. In his order, the chancellor found, in part, as follows in regard to the parties’ financial conditions:
Paul works regularly. Indeed, he is engaged in a number of business ventures. He is the principal in Jackson Truck Lines and has a number of trucks and trailers[;] he farms and has farm equipment[;] he has an interest in cattle; he has a used car and truck business[;] and he raises hay which he sells to the public.
Although Paul[ ] and Linda’s 2010 Joint Individual Income Tax Return shows a total income of $4,207 and an adjusted gross income of $3,916, it is also reflected that Paul had a higher gross income. Moreover, Paul’s bank statements reflected that the amount of money moving through Paul’s bank account was considerable!].] To the court’s amazement, Paul’s 8.05[f|inancial [statement ... claimed a net monthly pay of $313.34, a total monthly income of $4,540 and total monthly expenses of $9,429[,] in addition to monthly installment payments of $1,457.06.
While the court must take Paul’s assertion that the contents of his [Rule] 8.05[f]inancial [statement ... are “true and correct,” the court finds that Paul enjoys good health, has the ability to earn and is in fact earning a living, and has been able to make purchases since he and Linda separated. These include a new hay bailer, a computer, a flat screen television, a deep freezer and a refrigerator.
Linda’s [Rule] 8.05[f]inancial [statement, which is part of the court file, is completely inadequate. It only indicates Linda’s income and her expenses. It does not indicate that Linda has a remainder interest in real property and that she lives on that property at no cost. Nor does Linda’s [Rule] 8.05[f]i-nancial [statement indicate her ownership interest in Pet Palace, a business that played prominently in the parties’ testimony.
[[Image here]]
Paul offered no proof that Pet Palace was an income producing endeavor.
In addition to Pet Palace[,] Paul claimed that Linda possessed two trailers full of rustic furniture which she could sell to produce income. This would be in addition to the $7,000 received from Linda from the sale of scrap metal after the parties separated. No proof was offered by Linda or Paul as to the amount which would be generated by the sale of the rustic furniture contained in the two trailers.
It must be remembered that Linda has been found disabled by the Social Security Administration. Her only stated income is $708 monthly. Her [Rule] 8.05[f]inancial [statement does not show savings or personal property. The court is mindful that in approximately 2002, Linda received about $200,000 and converted $97,000 into $100 bills which she carried from the bank. The explanation as to how these funds were disposed of was completely unconvincing and unsat- *773 isfaetory. Also of note is the fact that the parties after 2000 or 2001 essentially had separate economic lives.
¶ 9. Aggrieved with the chancery court’s award of separate maintenance to Linda, Paul now appeals.
STANDARD OF REVIEW
¶ 10. This Court employs a limited standard of review when considering domestic-relations cases. Welch v. Welch, 98 So.3d 1133, 1134 (¶ 7) (Miss.Ct.App.2012). “Consequently, an appellate court will not disturb the chancery court’s findings unless such findings are manifestly wrong [or] clearly erroneous, or the court applied the wrong legal standard.” Id.
¶ 11. The factual findings of the chancellor are reviewed to determine if the award is supported by substantial evidence or whether the decision reflects manifest error. Fore v. Fore, 109 So.3d 137, 138 (¶ 6) (Miss.Ct.App.2013); see also Rodgers v. Rodgers, 349 So.2d 540, 541 (Miss.1977) (finding that where the wife’s course of conduct was a material factor in causing the separation at least equal to, if not great than, that of the husband, the decree of separate maintenance was erroneous); Tackett v. Tackett, 967 So.2d 1264, 1266-67 (¶¶ 8-10) (Miss.Ct.App.2007) (finding that the record supported the award of separate maintenance since evidence showed the wife’s conduct did not materially contribute to the material separation). Additionally and significant to our review of this case, the power of the court to grant the equitable relief of separate maintenance must be based on the requisites of a separation without material fault of the petitioner or requesting spouse and willful abandonment of her by the husband with refusal to support her. See Rodgers, 349 So.2d at 541; Lynch v. Lynch, 616 So.2d 294, 296 (Miss.1993); Pool v. Pool, 989 So.2d 920, 927 (¶¶ 20-21) (Miss.Ct.App.2008).
¶ 12. We acknowledge that on appeal, the amount of a separate-maintenance award is reviewed for abuse of discretion. See Shorter v. Shorter, 740 So.2d 352, 355 (¶10) (Miss.Ct.App.1999). A spouse entitled to separate maintenance is entitled to the same standard of living as if the parties still cohabited. Stanford v. Stanford, 734 So.2d 359, 361 (¶ 3) (Miss.Ct.App.1999). However, the chancellor must not overlook that the payor should lead as normal of a life as is reasonably possible with a decent standard of living. See Daigle v. Daigle, 626 So.2d 140, 145 (Miss.1993) (providing the six factors courts must consider in determining the amount of separate maintenance awarded).
¶ 13. Where the trial court provides no express findings of fact as to an element or requirement of proof, “[o]n appellate review we look at those findings which should have been made incident to the entry of the final judgment to determine whether the record contains substantial evidence to support them.” Day v. Day, 501 So.2d 353, 356 (Miss.1987); see Lynch, 616 So.2d at 296-97 (finding chancellor manifestly erred by awarding wife separate maintenance where there was no evidence husband refused to support wife and chancellor found wife not without fault in causing separation, displayed by her persistent nagging and accusations).
DISCUSSION
I. Whether Linda sufficiently met the jurisdictional requirements to sustain her separate-maintenance award.
II. Whether the separate-maintenance award should be sustained absent any corroboration of Linda’s case.
¶ 14. Paul argues that Linda failed to sufficiently meet the jurisdictional re *774 quirements to sustain her separate-maintenance award. In support of his argument, Paul asserts that Linda’s misconduct materially contributed to the separation of the parties, and he argues that his conduct failed to constitute willful abandonment of Linda accompanied by his refusal to support her. Paul claims that he only left the marital home because of the cumulative effect of events occurring over a five to six year period prior to the separation. Paul identifies Linda’s marital misconduct that materially contributed to the separation as the following: Linda told him she did not love him; she rarely engaged in sexual relations with him; she failed to support his efforts at farm work, household duties, or other business ventures; she never cooked meals; she acted secretively about her financial affairs; and she repeatedly threatened him to get his clothes and leave the marital home. Paul asserts that Linda failed to provide accurate information to the chancery court regarding her personal property, income, and assets. Additionally, Paul argues that the chancellor erred in awarding Linda separate maintenance absent any corroboration of Linda’s case.
¶ 15. We agree with Paul’s argument to the extent that the record reflects that Linda failed to meet the jurisdictional requirements necessary to support an award of separate maintenance, because she failed to show that her marital misconduct did not contribute to the separation. See Rodgers, 349 So.2d at 541. However, evidence in the record supports the chancellor’s factual finding as to the credibility of Linda’s claim that Paul engaged in an extramarital affair. Therefore, we find no abuse of discretion in the chancellor’s finding that Paul engaged in marital misconduct by engaging in an extramarital relationship. However, more than just Paul’s fault contributing to the separation must be shown to support the equitable relief of separate maintenance. Equity requires that Linda show that she is without marital fault in order to support an award of separate maintenance.[3]
¶ 16. We acknowledge that “[s]eparate maintenance is ... court-created equitable relief based upon the marriage relationship and is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.” Forthner v. Forthner, 52 So.3d 1212, 1219 (¶ 13) (Miss.Ct.App.2010). Moreover, Linda bore the burden of proof to show more than Paul’s marital misconduct. “The granting of separate maintenance is premised upon the existence of a valid marriage contract” and premised upon a showing that “there is no significant conduct on the part of the requesting spouse that negatively impacts the enjoyment of the marriage contract.” Id.[4] An award of separate maintenance arises from equitable principles, and equity requires that, as the requesting spouse, Linda show no significant conduct on her part negatively impacted the marriage or contributed to the separation. Linda failed to meet the evidentiary burden required to sustain a separate-maintenance award. Linda also failed in her burden to show that Paul refused to support her, as reflected in the omissions in her Rule 8.05 financial statement. Linda failed to disclose her free residence, real-property remainder interest, business interests, and other assets. We now turn to address jurisprudence applicable to *775 separate maintenance and to the facts of this case.
¶ 17. In Rodgers, 349 So.2d at 541, the Mississippi Supreme Court explained that the jurisdictional basis of a separate-maintenance decree stems from equitable principles first laid down in Mississippi in Garland v. Garland, 50 Miss. 694 (1874). The very power of the court to grant separate maintenance was based upon the following two requirements: (1) a separation without fault on the part of the wife, and (b) the husband’s willful abandonment of her with refusal to provide support to her.[5] Rodgers, 349 So.2d at 541. The Rodgers court explained that these two' requirements must be satisfied in order for the court to possess the equitable power to order separate maintenance. Id. The court further explained that the law applicable to separate-maintenance awards includes no requirement that the requesting spouse be blameless. Id.
¶ 18. As previously discussed, our jurisprudence establishes that in order for the court to equitably award séparate maintenance, the misconduct of the abandoned spouse must not have materially contributed to the separation. See id. In Rodgers, the supreme court provided guidance explaining that the requesting spouse need not be blameless or without any fault before invoking the equity required for separate maintenance. Id. The supreme court explained that where a wife’s course of conduct is a material factor in the separation at least equal to, if not greater than, that of the husband, the decree of separate maintenance is erroneous. Id. The supreme court in Rodgers found such an award erroneous since the power of the chancery court to grant separate maintenance is based on a separation without fault on the wife’s part and willful abandonment of her by the husband with a refusal by him to support her. Id.
¶ 19. In this case, the chancellor found in his memorandum opinion and judgment that the proof revealed that Linda and Paul, while living together for twenty years, began experiencing marital problems approximately five years prior to Paul’s departure from the marital home. The chancellor acknowledged in his opinion and judgment that Paul testified as to Linda’s marital fault — she began telling Paul to get out, that she did not love him, and that the home where they resided was her place, not his. The chancellor further acknowledged that Paul testified as to the following marital fault of Linda: he had to cook his own meals, including breakfast and dinner; the dining-room table had not been used in over ten years; and Linda would not even give him a ride to the fields if he needed it. The chancellor also found that Paul testified that the most recent misconduct of Linda leading to the separation pertained to Linda’s accusations that he was having an affair. As previously noted, Paul claimed that Bonnie was not his girlfriend until June 2011, several months after the March 2011 separation.
¶ 20. The chancellor found credible Linda’s claims of an extramarital affair between Paul and Bonnie, and as previously set forth, we find no abuse of discretion in this factual finding.[6] The dispositive issue *776 in this case pertains to the lack of other evidence necessary to support the award. The chancellor acknowledged in his findings that Linda asserted that she wanted to work things out with Paul; that she still loved him; and that she would reconcile if Paul met certain unspecified conditions. Linda bore the burden to establish in the record a present willingness to reconcile and to show that she had not engaged in significant marital misconduct contributing to the separation. See Day, 501 So-.2d at 357.[7] Without findings determining no significant misconduct of Linda contributed to the separation, the chancellor’s opinion began identifying the assets and finances of the parties, as well as ascertaining the income-earning potential and health of the parties. This included a review of bank statements and the Rule 8.05 financial statements of each party. As noted, the chancellor found Linda’s explanation of her finances lacked credibility and was unsatisfactory with respect to her failure to disclose how she used the approximately $200,000 she received in 2002.
¶ 21. After reviewing the finances of the parties, the chancellor found that separate maintenance constituted a judicial command to one spouse to resume cohabitation or to provide support. Without applying equity principles to Linda’s behavior, the chancellor awarded separate maintenance, providing that even if Linda had contributed to the separation and wanted to work out the parties’ problems, Paul had no intentions of resuming cohabitation. The chancellor’s analysis fails to embrace that no equitable jurisdiction existed in this case to award separate maintenance without first applying the princi-pies of equity to the marriage relationship and finding Linda, the requesting spouse, was without significant marital fault. A review of the record shows that the chancellor erred in failing to require the evidence necessary to support the separate-maintenance award. The equitable relief of separate maintenance requires the requisite evidence of a separation without fault of the wife as well as evidence showing no significant misconduct on her behalf materially contributed to the separation of the parties. Rodgers, 349 So.2d at 541. As explained by the supreme court in Rodgers, the power of the chancery court to grant the equitable relief of separate maintenance must be based on a separation without fault on the wife’s part and on the willful abandonment of her by the husband with a refusal by him to support her. Id. Albeit well intentioned, a separate-maintenance decree lacking the requisite evidence is erroneous. Id.; see also Pool, 989 So.2d at 927 (¶¶ 20-21) (noting that two requisites for power of chancellor to award separate maintenance include (1) separation without fault by wife, and (2) that husband willfully abandoned her and refused to support her).[8] Here, after failing to require Linda to prove the requisite separation without material fault on her behalf, the chancellor stated that
there is little difference between a suit for separate maintenance and a suit for alimony and substantially the same principles of law apply in fixing the amount.... [T]he amount of separate maintenance should be a sum sufficient to provide as nearly as possible the same support and maintenance as the *777 wife would have received if the parties had continued normal cohabitation[.]
¶ 22. While alimony and separate maintenance pertain to financial support, the awards differ as to the evidence required. The chancellor erred in applying the requisite evidentiary requirements of alimony to an equitable award of separate maintenance. This Court recognizes that in divorce proceedings, any award of alimony must be based upon a determination of need for such award upon a finding of a deficit suffered by a party after completion of the equitable division of marital property. See generally Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). In divorce proceedings, once a marriage is dissolved, the equitable division of property is governed by the law as set forth in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). If the equitable division of property leaves neither spouse with a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses, then no alimony award is appropriate. Lauro v. Lauro, 847 So.2d 843, 848 (¶ 13) (Miss.2003); Seymour v. Seymour, 960 So.2d 513, 519 (¶ 16) (Miss.Ct.App.2006). In contrast to the required showing of a deficit for an alimony award, a separate-maintenance decree provides equitable relief entitling the petitioning spouse claiming abandonment to be supported in the same standard of living as if the parties were still cohabiting. Stanford v. Stanford, 734 So.2d 359, 361 (¶3) (Miss.Ct.App.1999). The amount of a separate-maintenance award is determined by applying six factors as set forth in Daigle, 626 So.2d at 145, and Honts v. Honts, 690 So.2d 1151, 1153 (Miss.1997).
¶ 23. Divorce and alimony are distinct concepts from separate maintenance, and divorce and alimony are governed by statute, not common law. Dearman v. Dearman, 811 So.2d 308, 312 (¶12) (Miss.Ct.App.2001); see also Miss.Code Ann. § 93-5-17 (Rev.2004); Miss.Code Ann. § 93-5-23 (Supp.2012). Separate maintenance, however, arises from equitable principles established by case law, not statutory law. The spouse seeking the equitable relief of separate maintenance must show that he or she did not engage in marital misconduct that materially contributed to the separation in order for the court to possess the equitable power to enforce the continuing duty of financial support regarding the existing marital relationship.
¶ 24. With respect to the chancellor’s reference to the futility of reconciliation as a basis to award separate maintenance, we acknowledge that upon reconciliation, the support obligation of a separate-maintenance award indeed becomes null and void. See Watkins v. Watkins, 942 So.2d 224, 228 (¶ 12) (Miss.Ct.App.2006). However, the prospect of reconciliation is a distinct issue from whether equity supports separate maintenance or whether both spouses engaged in significant misconduct materially contributing to the separation. See Day, 501 So.2d at 357 (discussing reconciliation); Pool, 989 So.2d at 927 (¶ 21) (providing the two requisites for power of court to award equitable relief of separate maintenance).
¶ 25. Upon reviewing the record, we find that the chancellor erred in failing to find, before awarding separate maintenance, that no significant marital misconduct by Linda materially contributed negatively to the separation. See Rodgers, 349 So.2d at 541. Also, Linda failed to establish that Paul refused to support her after the separation, due to the significant omissions in her Rule 8.05 financial statement.
¶ 26. The record shows that Paul’s separation from Linda occurred after the culmination of a five to six year period pre *778 ceding the separation during which Linda’s marital fault progressively increased by her adamantly proclaiming no love for Paul; secretly conducting financial dealings; failing to provide companionship or other support for the relationship; and demanding he leave the marital home. As stated, Paul testified that Linda repeatedly reminded him that the marital house and land were hers and that he held no interest in the property. However, Linda oddly excluded mention of her free residence and her real-property remainder interest in her Rule 8.05 financial statement. “A spouse is not entitled to separate maintenance when that spouse’s conduct has materially contributed to the separation.” Forthner, 52 So.3d at 1220 (¶ 17).[9] In the absence of an explicit finding by the chancellor, we are required to review the record to determine if substantial evidence supports a separate-maintenance award.[10] Upon review of the record, we find Linda failed to establish by substantial evidence that no significant misconduct on her behalf contributed to the separation.
¶ 27. Based on the foregoing, we must reverse and render the chancery court’s award of separate maintenance to Linda.[11]
III. Assuming the award of separate maintenance is sustainable, whether the amount of the award of separate maintenance constituted manifest error.
¶ 28. As Issues I and II are case-dis-positive, the remaining issue is rendered moot.
¶ 29. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, FAIR AND JAMES, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. See Rodgers v. Rodgers, 349 So.2d 540, 541 (Miss. 1977).

. See Lynch v. Lynch, 616 So.2d 294, 296 (Miss.1993); Day v. Day, 501 So.2d 353, 357 (Miss. 1987).

. See Rodgers, 349 So.2d at 541.

. See also Robinson v. Robinson, 554 So.2d 300, 304 (Miss.1989).

. The application of equal-protection principles allows either spouse to seek the equitable remedy of separate maintenance. However, since Linda is the petitioner in this case claiming the entitlement, this opinion refers to the wife as the petitioner in its analysis.

. The chancellor noted that Bonnie is much younger than Paul and that Bonnie and Paul lived together at the time of the chancellor’s opinion and judgment. As discussed previously, we review factual findings of the chancellor for abuse of discretion and will affirm if they are supported by substantial evidence.

. In McDonald v. McDonald, 69 So.3d 61, 65 (¶ 8) (Miss.Ct.App.2011), this Court found that "[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance for her until such time as they may be reconciled to each other.”

. See Churchill v. Churchill, 467 So.2d 948, 951 (Miss.1985).

. See Kergosien v. Kergosien, 471 So.2d 1206, 1211 (Miss.1985) ("Separate maintenance generally will not be awarded to a spouse whose conduct was a material factor in the separation at least equal to that of the other spouse.”).

. See Lynch, 616 So.2d at 296-97.

.We find unnecessary any further review with respect to the amount of separate maintenance since we find the award erroneous in lacking the requisite evidence of a separation without significant misconduct of the spouse seeking the equitable relief. Rodgers, 349 So.2d at 541; Pool, 989 So.2d at 927 (Ml 20-21).