# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00261-COA

**SCOTT WILLIAMSON**                                                                                     **APPELLANT**

**v.**

**SONYA WILLIAMSON**                                                                                       **APPELLEE**

DATE OF JUDGMENT:                 11/07/2018
TRIAL JUDGE:                             HON. KENNETH M. BURNS
COURT FROM WHICH APPEALED:    LOWNDES COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         J. DOUGLAS FORD
ATTORNEY FOR APPELLEE:          CARRIE A. JOURDAN
NATURE OF THE CASE:               CIVIL - DOMESTIC RELATIONS
DISPOSITION:                           AFFIRMED - 05/19/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1.     Scott Williamson argues that the chancery court erred by ordering him to pay his ex-wife too much child support and alimony.  We find no error and therefore affirm.

## FACTS

¶2.     Scott and Sonya Williamson were married in 1995.  They have three children.  At the time of trial, their oldest child was twenty-two years old, emancipated, and lived with Scott.  Their other two children were still minors and lived with Sonya.

¶3.     In 2016, Sonya filed a complaint for divorce based on fault grounds or, in the alternative, irreconcilable differences.  Scott answered and filed a counterclaim for divorce based on fault grounds or, in the alternative, irreconcilable differences.

¶4.    The chancery court entered a temporary order granting Sonya temporary legal and physical custody of their children.  Scott was granted visitation.  The temporary order required Scott to pay child support of $660 per month; the mortgage, taxes, and insurance on the marital home; and certain marital debt.  He was also ordered to maintain health insurance for Sonya and the children.  The temporary order granted Sonya temporary use and possession of the marital home and required her to pay utilities and her credit card debt.

¶5.    Prior to trial, the parties consented to an irreconcilable differences divorce.  They agreed to joint legal custody of their minor children with Sonya to have physical custody and Scott to have visitation.  They also agreed on the value of the marital home, other real property, and personal property.  They stipulated that the court would equitably divide the marital estate and determine the amount of child support and whether either party was entitled to alimony and, if so, its form, amount, and duration.

¶6.    After a one-day trial, the chancery court entered an opinion and final judgment.  The court equitably divided the marital estate and ordered Scott to pay child support of $1,720 per month and periodic alimony of $1,500 per month for one year and $1,200 per month thereafter.  Scott filed a motion to alter or amend the judgment, which was denied, and a notice of appeal.

## ANALYSIS

¶7.    Scott argues that the chancellor manifestly erred in determining his adjusted gross income (AGI) for purposes of calculating child support and otherwise ordered him to pay an excessive amount of child support.  Scott also argues that the chancellor erred by awarding

2

alimony because Sonya failed to prove a "deficit" or, in the alternative, that the chancellor ordered him to pay an excessive amount of alimony. We address these issues in turn.

## I. Child Support

¶8. "[A]n award of child support is a matter within the discretion of the chancellor and . . . will not be reversed unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." *Clausel v. Clausel*, 714 So. 2d 265, 266 (¶6) (Miss. 1998). "Furthermore, the process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id.* at 266-67 (¶6) (brackets and quotation marks omitted).

¶9. Scott first argues that the chancellor manifestly erred in determining his AGI for purposes of calculating child support. The chancellor noted that Scott's tax returns showed that his gross income from his work at Steel Dynamics had increased from approximately $83,000 in 2015, to $90,000 in 2016, and to $111,000 in 2017. In addition, a recent statement of Scott's earnings from 2018 showed gross earnings of $90,588 for the first thirty-six weeks of 2018. The chancellor found that the 2018 pay statement was the "best evidence of Scott's current [AGI]." Based on Scott's 2018 pay statement, including his mandatory withholdings, the chancellor found that Scott's monthly AGI was $8,617.14 and ordered him to pay child support of $1,720 per month, or just under twenty percent of his AGI.[1] Scott does not challenge the chancellor's calculations but argues that his 2018 statement is not an

---

[1] The statutory child support guidelines establish a rebuttable presumption that a parent should pay twenty percent of his or her AGI for the support of two minor children. Miss. Code Ann. § 43-19-101(1) (Rev. 2017).

accurate reflection of his AGI and that $1,720 per month is excessive.

¶10.    Scott argues that the chancellor erred by using his 2018 earnings statement because his income fluctuates and because the chancellor improperly assumed that his earnings for the first thirty-six weeks of 2018 would continue.  Scott argues that the chancellor should have averaged multiple years of earnings to determine his AGI.  Scott is correct that when the payor's "income tends to fluctuate, a chancellor *may* use income averaging to calculate applicable child support." *Roberts v. Roberts*, 924 So. 2d 550, 553 (¶5) (Miss. Ct. App. 2005) (emphasis added).  But in other cases, income averaging *may not* be appropriate, and we review the chancellor's decision only for manifest error or abuse of discretion.  In this case, Scott's earnings had increased from 2015 forward, and there is no proof that Scott's 2018 earnings were not a fair reflection of his current earnings.  Therefore, we cannot say that the chancellor manifestly erred or abused his discretion by determining that Scott's most recent earnings statement provided the "best evidence of Scott's current [AGI]."

¶11.    Scott also suggests that the chancellor manifestly erred in determining his AGI because his 2018 earnings statement includes significant overtime pay, which may vary. However, our "Supreme Court has held that in calculating child support, income received from overtime pay may be considered." *Williams v. Dep't of Human Servs.*, 116 So. 3d 176, 180 (¶9) (Miss. Ct. App. 2013) (citing *Gillespie v. Gillespie*, 594 So. 2d 620, 622-23 (Miss. 1992)).  Scott also earned significant overtime pay in 2017, and there is no evidence "that his overtime hours [will] cease." *Id.*  Under the circumstances, it was "reasonable" for the chancellor "to anticipate that [Scott] will receive overtime wages in the future." *Id.*

4

"Therefore, we cannot say that the [chancellor] abused [his] discretion or was manifestly wrong in including [Scott's] overtime wages in calculating his [AGI]." *Id.*

¶12.    Next, Scott argues that the chancellor should have excluded the 401(k) contributions shown on his 2018 earnings statement from his AGI.  Scott reasons that those contributions should have been excluded because the chancellor ruled that Scott's contributions to his 401(k) account after the temporary order was entered were his separate property.  However, *voluntary* retirement contributions are properly included in AGI.  Miss. Code Ann. § 43-19-101(3)(b)(iii).  The fact that such contributions are Scott's separate property does not exclude them from his AGI for purposes of calculating child support.  (Indeed, *all* of Scott's current earnings are his separate property, but clearly that does not mean that his current earnings cannot be considered for purposes of calculating child support.)

¶13.    Finally, Scott argues that the chancellor should have departed from the guidelines because the parties' oldest child lives with him and/or because the children all have money market accounts that were gifted to them by Scott's grandmother.  However, the parties' oldest child was twenty-two years old at the time of trial, emancipated, and working full-time.  He does not factor into the calculation of child support.  *See* Miss. Code Ann. § 93-5-23 (Rev. 2018) ("The duty of support of a child terminates upon the emancipation of the child.").  Moreover, the money market accounts were gifts to the children prior to their parents' separation, not payments in lieu of child support.  Neither of these facts *required* the chancellor to depart from the guidelines, and he did not abuse his discretion by following the guidelines.

5

¶14. In summary, the chancellor did not manifestly err in determining Scott's AGI or otherwise abuse his discretion in setting child support.

## II. Alimony

¶15. Scott also argues that the chancellor erred by awarding alimony because Sonya failed to present credible evidence of a deficit with respect to having sufficient resources and assets to meet her reasonable needs and living expenses. In the alternative, Scott argues that the chancellor erred by awarding periodic alimony in the amount of $1,500 per month for one year and $1,200 per month thereafter.

¶16. "Alimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit." *Lauro v. Lauro*, 847 So. 2d 843, 848 (¶13) (Miss. 2003). By "deficit," we mean "a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses." *Layton v. Layton*, 181 So. 3d 275, 282 (¶17) (Miss. Ct. App. 2015) (emphasis omitted) (quoting *Jackson v. Jackson*, 114 So. 3d 768, 777 (¶22) (Miss. Ct. App. 2013)).

¶17. In the present case, the division of marital property, while fair and equitable, did not provide Sonya with any significant assets to meet her ongoing living expenses. She was awarded the marital home, which is valued at $325,000, along with its $160,000 mortgage. She was also awarded approximately $67,000 in retirement funds, to which she does not have immediate access, and a 2007 GMC Yukon. The court also ordered Sonya to pay almost $6,000 in credit card debt. Sonya's Uniform Chancery Court Rule 8.05 statement showed

6

net monthly pay, after deductions, of $1,384.13 from Sonya's work as a school secretary,[2] and $3,421 in living expenses.[3] Based on Sonya's assets, income, and expenses, we cannot say that the chancellor manifestly erred in determining that Sonya has a deficit that warranted consideration of alimony.

¶18.    A chancellor must consider the following factors in determining whether to award alimony and the appropriate amount of alimony:

    1.    The income and expenses of the parties;

    2.    The health and earning capacities of the parties;

    3.    The needs of each party;

    4.    The obligations and assets of each party;

    5.    The length of the marriage;

    6.    The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

    7.    The age of the parties;

    8.    The standard of living of the parties, both during the marriage and at the time of the support determination;

    9.    The tax consequences of the spousal support order;

    10.    Fault or misconduct;

---

[2] Sonya has an associate's degree from a community college. She worked as a school secretary because it allowed her to be home when the parties' children were out of school.

[3] Scott argues that Sonya's Rule 8.05 statement "overstated" her expenses because it included expenses, such as the mortgage payment, that the temporary order required Scott to pay. However, the final judgment requires Sonya to pay the mortgage, and her Rule 8.05 statement appears to provide a reasonable estimate of her post-divorce living expenses.

11.  Wasteful dissipation of assets by either party; or

12.  Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

¶19.  The chancellor's opinion made specific findings regarding each of the *Armstrong* factors.  The parties were married for twenty-one years before their separation, and the chancellor found that "Scott's admitted infidelity" and other conduct toward Sonya "caused this marriage to fail."  In addition, as discussed above, Scott earns substantially more than Sonya, and he owns real property worth $180,000 that was deemed his separate property, not subject to equitable distribution.  The chancellor also noted that because the judgment was entered prior to January 1, 2019, the alimony would be deductible by Scott and taxable income for Sonya.  *See* Internal Revenue Service, Publication 504, *Divorced and Separated Individuals*, at 12-13 (2019), *available at* https://www.irs.gov/pub/irs-pdf/p504.pdf.

¶20.  The chancellor's findings are supported by substantial evidence, and we cannot say that he abused his discretion by awarding periodic alimony or that the award was excessive.  Scott argues that the chancellor overstated his income, but we have already addressed that argument above.  The record supports a determination that Scott has the ability to pay alimony and still have disposable income and that Sonya has a "deficit," i.e., a need for periodic alimony.  Accordingly, we also affirm the chancellor's award of alimony.

**CONCLUSION**

¶21.  The chancellor did not manifestly err, abuse his discretion, or commit any other legal error in awarding child support or alimony.

¶22.    **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.  BARNES, C.J., NOT PARTICIPATING.**